DIAMOND McCARTHY LLP
*Attorneys for Sheila M. Gowan,*
 *Chapter 11 Trustee for Dreier LLP*
620 Eighth Avenue, 39th Floor
New York, New York 10018
Tel:  (212) 430-5400
Fax:  (212) 430-5499
Howard D. Ressler, Esq.
Stephen T. Loden, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X
                                                        :
**In re**                                               :       **Chapter 11**
                                                        :
**DREIER LLP,**                                         :       **Case No. 08-15051 (SMB)**
                                                        :
                                                        :
            **Debtor.**                                 :
---------------------------------------------------------X

**TRUSTEE'S MOTION PURSUANT TO SECTION 105(a) OF**
**THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE FOR APPROVAL OF AGREEMENTS**

TO:    THE HONORABLE STUART M. BERNSTEIN,
         UNITED STATES BANKRUPTCY JUDGE:

Sheila M. Gowan (the "Trustee"), chapter 11 trustee for Dreier LLP (the "Debtor"), files this motion (the "Motion") pursuant to section 105(a) of the Bankruptcy Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking the Court's authorization and approval to settle and resolve certain (1) avoidance claims and (2) matters relating to forfeiture, and in support thereof, respectfully states as follows:

1

## JURISDICTION

1. This Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and section 105(a) of the Bankruptcy Code. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(A) and (L). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

2. On December 8, 2008, in *SEC v. Dreier*, Case No. 08-civ-10617 (MGC) (S.D.N.Y.), Mark F. Pomerantz (the "Receiver") was appointed as receiver of the assets of Marc Dreier, Dreier LLP (the "Debtor"), and certain affiliated entities.

3. On December 16, 2008, (the "Commencement Date") the Receiver, on behalf of Dreier LLP, commenced a voluntary case under chapter 11 of title 11 of the Bankruptcy Code. Following Dreier's arrest and incarceration, the Receiver operated the Debtor's business and managed the Debtor's assets pending appointment of a chapter 11 trustee.

4. On December 30, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed Sheila Gowan as the chapter 11 trustee for the estate of Dreier LLP, which appointment was approved by this Court on January 9, 2009 (the "Trustee Appointment Date").

5. On January 8, 2009, the U.S. Trustee appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

## FACTUAL BACKGROUND

6. This chapter 11 case was precipitated by the arrest of the Debtor's sole equity partner, Marc Dreier ("Dreier"), on criminal charges related to a massive Ponzi scheme (the "Scheme").

7. As part of the Scheme, Dreier induced third parties (the "Purchasers") to purchase certain promissory notes (the "Fraudulent Notes") that had supposedly been issued by clients of the Debtor. The third parties typically paid for the Fraudulent Notes by wiring funds to one of the Debtor's attorney trust accounts (the "5966 Account"). When payments of "fees," "interest" or "principal" (the "Payments") came due on the Fraudulent Notes, Dreier typically caused the Debtor to transfer funds to the Purchasers from the Debtor's 5966 Account or another one of Debtor's accounts.

8. Upon information and belief, one group of Purchasers were certain investment entities for which GSO Capital Partners LP or one of its affiliates serves as an investment manager, collateral manager, portfolio manager or in a similar capacity, and its related entities (collectively, with GSO Capital Partners LP, its affiliates and any entities controlled or managed thereby, "GSO"). During the course of the Scheme, GSO made wire transfers to Debtor accounts, and the 5966 Account in particular, totaling $165,000,000. GSO received wire transfers from Debtor accounts representing Fraudulent Payments totaling $196,031,761 (the "Note Fraud Funds") during the same period. Of the Note Fraud Funds, GSO received $62,564,056 in transfers from the 5966 Account within 90 days of the Commencement Date. And, out of *that* money, $35,409,90.61 was deposited directly into identifiable sub-accounts belonging to GSO entities (the "GSO Sub-Accounts").

9. On March 13, 2009, the District Court hearing Dreier's criminal case entered an order freezing certain funds in the GSO Sub-Accounts (the "Frozen Funds"), as potentially forfeitable to the United States (the "Government") in connection with Dreier's criminal case.

10. On March 17, 2009, Dreier was charged in a superseding indictment that, among other things, sought the civil and criminal forfeiture of assets including the Frozen Funds.

11. Dreier pleaded guilty to the charges against him and a Preliminary Order of Forfeiture (the "Preliminary Order") was entered on July 13, 2009. The Preliminary Order did not address the Frozen Funds; however, the Government subsequently revealed its intention to seek to amend the Preliminary Order to provide for the forfeiture of the Frozen Funds.

12. On December 23, 2009, the Government applied to the District Court for a Consent Order of Forfeiture executed by GSO and the Government under which GSO has agreed to remit $30,895,027.78 to the Government in lieu of the Government's pursuit of the forfeiture of any of the funds on deposit in the GSO Sub-Accounts and a release of any claims the Government might have against GSO.

## THE AGREEMENTS

13. Following extensive arms-length negotiations, the Trustee, GSO, the Office of the United States Attorney for the Southern District of New York, and the trustee of Dreier's chapter 7 estate (the "Chapter 7 Trustee") have reached proposed agreements that, among other things, resolve (a) potential avoidance claims the Trustee could have brought against GSO related to the Payments received by GSO; and (b) potential challenges by the Trustee to the forfeiture of various assets seized by the Government, including the Frozen Funds on deposit in the GSO Sub-Accounts. The proposed agreement signed by the Trustee, the

Chapter 7 Trustee and GSO, for which approval is sought by this Motion, is attached as **Exhibit A** (the "GSO Agreement"). The proposed agreement between the Trustee and the Government, for which approval is also sought by this Motion and for which the Government seeks approval by the District Court is attached as **Exhibit B** (the "Coordination Agreement"). The proposed agreement between the Government and GSO, for which the Government seeks approval by the District Court is attached as **Exhibit C** (the "Consent Order of Forfeiture"). The material terms of these agreements are summarized as follows:

a. GSO shall forfeit to the Government $30,895,027.78 .(the "Forfeited Funds"). *See* Exhibit C.

b. GSO shall pay $9,250,000 to the Trustee, and $250,000 to the Chapter 7 Trustee. *See* Exhibit A.

c. The Trustee shall agree to forego any challenge to the Government's attempt to obtain by forfeiture the Forfeited Funds and any other assets identified in the Preliminary Order of Forfeiture. *See* Exhibit B.

d. The Trustee, Chapter 7 Trustee and GSO will exchange releases that, among other things, release (1) any claims the Trustee and Chapter 7 Trustee could have brought against GSO in connection with the Payments; and (2) release any claims GSO could have brought against the Debtor or the Trustee. *See* Exhibit A.

e. The Government will release to the Trustee certain art (the "Seized Art"), which the Government seized in connection with Dreier's criminal case. *See* Exhibit B.

f. The Government shall agree to forego any attempt to seize or obtain through forfeiture the proceeds of any avoidance actions brought by the Trustee against other Purchasers identified to the Government by the Trustee in connection with payments made in respect of the Fraudulent Notes. *See* Exhibit B.

g. As a condition of the GSO Agreement, GSO must obtain an injunction barring suit against GSO brought by other creditors of the two estates and the Trustee has undertaken to ask this Court to enter a Bar Order (defined and discussed below) to

5

ensure that the settlement results in a full and complete resolution of GSO's potential exposure as a purchaser of, and recipient of payments in respect of, the Fraudulent Notes. *See* Exhibit A.

h. The GSO Agreement specifically provides that all of the parties' obligations under that agreement are contingent on this Court's approval. *See* Exhibit A. The Coordination Agreement specifically provides that all of the parties' obligations under that agreement are contingent on this Court's approval of the GSO Agreement. *See* Exhibit B.

## RELIEF REQUESTED AND APPLICABLE AUTHORITY

14. By this Motion, the Trustee seeks entry of an order, substantially in the form attached as **Exhibit D**, pursuant to Bankruptcy Rule 9019, approving the GSO Agreement and the Coordination Agreement.

*The GSO Agreement and the Coordination Agreement are in the*
*Best Interests of the Debtor's Estate*

15. Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)* 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). A decision to accept or reject a compromise or settlement is within the sound discretion of the Court. *Id.; see also* 9 *Collier on Bankruptcy* ¶ 9019.02 (15th ed. rev. 2001). The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505.

16. Bankruptcy courts have applied the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law, (ii) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, (iii) the proportion of creditors who do not object to, or who affirmatively support the proposed settlement, and (iv) the extent to which the settlement is truly the product of arms' length bargaining and not the product of fraud or collusion. *See In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994).

17. The Trustee has determined in her reasonable business judgment that, taken together, the proposed GSO Agreement and the proposed Coordination Agreement, are reasonable within the standards discussed above, and in the best interests of the Debtor's estate. This is because approval of the GSO Agreement and the Coordination Agreement will relieve the Debtor of the burdens of (a) protracted, expensive and complex litigation with the Government over the forfeiture of the Frozen Funds and other assets, with the outcome all but uncertain; and (b) expensive and complex litigation with GSO, in circumstances where GSO has already agreed to pay millions of dollars to the Government to "settle" the forfeiture of money on deposit in the GSO Sub-Accounts, some of the very same money to which the Trustee stakes a claim.

18. From the Trustee's business perspective, the GSO Agreement--and its reasonableness--is inextricably linked to the Coordination Agreement--and its reasonableness--, both of which are driven by the Government's asserted forfeiture powers in the complex context of criminal proceedings, a now dissolved receivership, and two bankruptcy cases. In particular, the Government relies on a principle of forfeiture law known as the "relation back" doctrine. Under this doctrine, when the Government obtains assets through criminal or civil forfeiture, title

7

is deemed to have shifted as of the time of the criminal act giving rise to forfeiture. *See United States* v. *A Parcel of Land*, 507 U.S. 111, 128-130 (1993). Based on that doctrine, certain courts have observed that the criminal or civil forfeiture of property removes the property from a bankruptcy estate; the forfeiture reaches back in time and shifts title so that the asset never becomes property of the estate, or at least was not at the commencement of the bankruptcy case. *E.g.*, *In re Thena, Inc.*, 190 B.R. 407 (D. Or. 1995); *see also United States* v. *Klein* (*In re Chapman*), 264 B.R. 565, 572 (9th Cir. B.A.P. 2001); *In re Winpar Hospitality Chattanooga, LLC*, 401 B.R. 289, 293 (E.D. Tenn. 2009).

19. The Government believes that the Frozen Funds constitute the traceable proceeds of Dreier's confessed crimes and are, therefore, subject to forfeiture. GSO believes that the Trustee will not be able to avoid the transfer of the Frozen Funds to GSO. For the reasons discussed below, the Trustee disagrees with the Government and GSO, yet she has participated in protracted and difficult negotiations with the Government and GSO for months in an effort to resolve the issues. GSO has been unwilling to settle the Trustee's potential avoidance actions against GSO unless that settlement includes a release by the Chapter 7 Trustee. In turn, the Government has been unwilling to compromise (or pay over to the Trustee) *any amount* of the Frozen Funds the Government seeks to forfeit and to which the Trustee believes she has an avoidance claim. The Government furthermore has been unwilling to settle with the Trustee concerning her challenge to the forfeiture unless and until the Government reached agreement with GSO over the Frozen Funds. In sum, until now, the Government has refused to compromise with either GSO or the Trustee without an agreement between the Trustee and GSO, and GSO has refused to settle with the Trustee without signature of the Chapter 7 Trustee.

20. The Trustee strongly disagrees with the appropriateness of the use of forfeiture laws in the context here, and the way in which the use of the laws has effectively limited her avoidance powers. The bankruptcy system has been used as the traditional means for distributing assets after the collapse of Ponzi schemes for more than 70 years, *see, e.g., Cunningham* v. *Brown*, 265 U.S. 1, 8-13 (1924), and it is the superior system for doing so. *Accord United States* v. *Frykholm*, 362 F.3d 413, 416 (7th Cir. 2004) (Easterbrook, J.) (in the earliest reported use of forfeiture to redistribute Ponzi assets, vigorously criticizing the government for not instead using the bankruptcy system). *See also*, *SEC* v. *Madoff*, No. 08-Civ.-10791 (LLS), 2009 WL 980288 (S.D.N.Y. 2009) (Stanton, J.) (observing that, while forfeited assets may be used for restitution, forfeiture "does not create a comprehensive means of collecting and distributing assets. Bankruptcy would have made it pellucid that [certain creditors] cannot enjoy any priority over other victims and reap a profit while [defendant's] other creditors go begging")(internal citation omitted)).

21. There is neither an act of Congress nor an order of the Executive Branch that authorizes the Government to displace the traditional role of the bankruptcy system in Ponzi cases. *See also United States* v. *Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 110 (2d Cir. 2000) (noting recurring criticism of the government's use of the forfeiture laws to the detriment of the rights of innocent persons); *Pacheco* v. *Serendensky*, 393 F.3d 348, 354-56 (2d Cir. 2004) (observing that the interpretation of the forfeiture laws advanced by the government in that case would implicate due process rights under the United States Constitution); *United States* v. *$448,342.85*, 969 F.2d 474, 476 (7th Cir. 1992) (Easterbrook, J.) (noting that interpretation of the forfeiture laws advanced by the government in that case would implicate the Fifth Amendment right against takings without compensation).

22. The Trustee has not located any authority in which a bankruptcy estate mounted a successful challenge to a government forfeiture, or in which a court advanced an interpretation of the relation back doctrine that would favor a chapter 11 debtor in circumstances analogous to this case. Moreover, the Government has essentially unlimited resources with which to defend a challenge by the Trustee, and its position here appears to reflect a national policy being employed in other high profile Ponzi scheme cases. In these circumstances, the Trustee fully expects the Government to vigorously litigate any challenge to forfeiture through the appellate process to final judgment. This expensive process would likely take years, during which time the Government would retain possession of the assets it has already seized, while the estate would dissipate its limited resources. At the same time, the Trustee's ability to pursue avoidance actions against GSO and other Purchasers would be hampered by both the Debtor's lack of liquid assets, and uncertainty as to whether the Government would also seek to forfeit avoidance action recoveries obtained by the Trustee or make direct arrangements with other Purchasers for the re-payment of money that would potentially defeat the Trustee's avoidance powers or otherwise interfere with them.

23. The Government and GSO, therefore, essentially have placed the Trustee in the position of choosing between two options:

    a. Protracted, expensive litigation against the Government in which the likelihood of success cannot be evaluated. *See In re Boyer*, 372 B.R. 102, 106 (D. Conn. 2007) (fact that litigating constructive trust claims would be "difficult and time consuming" favored approval of settlement of those claims). And expensive litigation against GSO in which,

similarly, the likelihood of success cannot be evaluated given the context of the Consent Forfeiture of amounts equal to GSO's "profits" from the Scheme. During this time, potential avoidance defendants could assert the possibility of forfeiture as leverage in settlement negotiations, and the estate would be left without sufficient funds to aggressively pursue those actions, or

b. Separate settlements with the Government and GSO from which the Debtor would obtain (1) $9.25 million in cash from GSO; (2) the Seized Art from the Government, which the Government has told the Trustee may have had an approximate aggregate purchase price value of $3 million; and (3) certainty that the Government will not seek to undermine other avoidance actions. In exchange, the Debtor will give up (1) the right to challenge the Government's overall forfeiture of assets; and (2) the right to litigate any claims against GSO. *See In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) ("As long as the integrity of the negotiation process is preserved, a strong initial presumption of fairness attaches . . .").

24. The Trustee's business judgment is that the second option, settling with GSO, in conjunction with a settlement with the Government, which will bring artwork into the

estate for sale, is the best course because doing so (i) reflects a fair evaluation of the risks to the estate of contesting forfeiture and litigating claims against GSO; (ii) will clear the way for the Trustee to commence avoidance actions against other Purchasers and/or pursue a plan of reorganization involving them; and (iii) maximizes a return to the estate from two different players in this complex legal landscape. *See In re Raytech Corp.*, 261 B.R. 350, 160 (Bankr. D. Conn. 2001) (approving settlement that avoided duplicative litigation and allowed bankruptcy estates to move forward with other claims). For these reasons, the Trustee respectfully submits that the GSO Agreement and the Coordination Agreement are in the best interest of this estate. *See In re Ashford Hotels, Ltd.*, 226 B.R. at 804; *In re Best Prods. Co.*, 168 B.R. at 50.[1]

25. Accordingly, the Trustee respectfully requests the Court to enter an order, substantially in the form attached as **Exhibit D,** approving the GSO Agreement and the Coordination Agreement .

*The Bar Order*

26. The GSO Agreement requires the Trustee to obtain a permanent injunction (the "Bar Order") barring:

> any and all creditors, parties in interest, and any entity or person that files a proof of claim in the [DLLP or Dreier Bankruptcy Proceedings] from commencing or continuing any and all past, present or future claims or causes of action . . . and from any and all allegations of liability or damages . . . against [GSO] . . . relating to Marc Dreier, [DLLP], and the Note Fraud Funds . . .

---

[1] The settlement agreement also calls for GSO to pay $250,000 to the Chapter 7 Trustee. While the Trustee believes that she is the only one who has standing to seek to avoid and recover transfers from the Debtor's accounts, *see Cassirer* v. *Herskowitz* (*In re Schick*), 234 B.R. 337, 343-45 (Bankr. S.D.N.Y. 1999), the Trustee believes that the settlement is reasonable given the costs of litigating against the Chapter 7 Trustee, s*ee In re Tampa Chain Co.*, *Inc.*, 70 B.R. 25, 26 (S.D.N.Y. 1987), and the fact that GSO refuses to enter into an agreement with her without the release and signature of the Chapter 7 Trustee.

27. GSO requires the relief offered by the Bar Order for a complete settlement of the claims between the Trustee and GSO, because without it other victims of the Scheme may claim that Note Fraud Funds were traceable to monies taken from them, and therefore they, rather than the Trustee, would have standing to avoid and recover transfers of "their" money from the Debtor to GSO. *See In re Cannon*, 277 F.3d 838, 850 (6th Cir. 2002). While the Trustee believes that such claims must necessarily fail because tracing is not permitted in the context of cases like this which involve commingled Ponzi accounts, s*ee S.E.C.* v. *Credit Bancorp, Ltd.*, 290 F.3d 80 (2d Cir. 2002); *see also S.E.C.* v. *Byers*, 2009 WL 2185491, at *9 (S.D.N.Y. 2009); *Cassirer*, 234 B.R. at 343-45, the Bar Order (and the one to be obtained by the chapter 7 trustee via a separate application in that case) is narrowly drawn to obviate any such risk. The proposed Bar Order limits the injunction to (1) those persons and entities who are creditors in this case and in the chapter 7 case, and who (2) assert claims or causes of action relating to Marc Dreier, the Debtor and the Note Fraud Funds scheme. In short, the injunction is not a blanket bar against unknown third-party non-debtors. It bars potential suits by other creditors in the two bankruptcy cases arising from the transfer of money from the Debtor's accounts in connection with the Scheme. Moreover, the Bar Order is essential to ensure the ratable and equitable distribution of the Debtor's estate and the Chapter 7 estate to their creditors. Otherwise, there exists a potential for a "free for all" in which one creditor/victim would seek to recover to the detriment of another creditor/victim, precisely the result that the Second Circuit cautioned against in *S.E.C. v. Credit Bancorp*. The money recovered from GSO under the GSO Agreement and in any future avoidance actions will be, of course, available for distribution to *all* of the creditors of the estate, the vast majority of which are victims of Marc Dreier's crimes.

28. The Bar Order is well within the Court's *in rem* jurisdiction over the estate of the Debtor, *see In re W.T. Grant Co.*, 20 B.R. 186, 189 (S.D.N.Y. 1982), and indeed reflects nothing more than the fact that transfers from the Debtor to GSO were transfers of the Debtor's interests in estate property. It thus bars persons who have availed themselves of this Court in connection with the Debtor's bankruptcy case from asserting claims against GSO related to "Marc Dreier, Dreier LLP and the Note Fraud Funds."

29. To eliminate any doubt concerning the validity or effect of the Bar Order, in addition to the notice required by Bankruptcy Rule 2002, the Trustee is providing notice of this Motion to all persons identified by the Government as victims of Dreier's crimes.

## NOTICE

30. Notice of this Motion has been given to: (i) the chambers of the Honorable Stuart M. Bernstein, One Bowling Green, New York, New York, 10004, Courtroom 723; (ii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Brian S. Masumoto, Esq.; (iii) Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, NY 10017, Attn: Tracy L. Klestadt, Esq., attorneys for the Creditors' Committee; (iv) McCarter & English LLP, 245 Park Avenue, 27th Floor, New York, NY 10167, Attn: Joseph Lubertazzi, Jr., Esq., attorneys for Wachovia Bank, N.A.; (vi) LaMonica, Herbst & Maniscalco LLP, 3305 Jerusalem Avenue, Wantagh, NY 11793, Attn: Salvatore LaMonica, Esq., Chapter 7 Trustee; (vii) those parties who have filed notices of appearance in this chapter 11 case, including the Office of the United States Attorney for the Southern District of New York; (viii) White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036, Attn: J. Christopher Shore, Esq., and Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, Attn: David M. Brodsky, Esq., attorneys for

GSO Capital Partners LP; and (ix) those parties identified as victims of the Scheme in the restitution order entered in Dreier's criminal case on September 29, 2009 and (x) all creditors of the Debtor. The Trustee submits that no further notice is necessary.

WHEREFORE the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit D**, granting the relief requested herein, and such other and further relief as may be just.

Dated: New York, New York
January 8, 2010

Respectfully submitted,

DIAMOND McCARTHY LLP

By: _____s/HowardD. Ressler_____
Howard D. Ressler
Stephen T. Loden
Amos Elberg
620 Eighth Avenue, 39th Floor
New York, New York 10018
Telephone: (212) 430-5400
Facsimile: (212) 430-5499

*Attorneys for Sheila M. Gowan, Chapter 11 Trustee for Dreier LLP*