SULLIVAN & CROMWELL LLP
125 Broad Street
New York , New York 10004
(212) 558-4000

*Attorneys for Eton Park CLO Management 1,*
*Eton Park CLO Management 2, Eton Park Fund, L.P.,*
*and Eton Park Master Fund, Ltd.*

COHEN & GRESSER LLP
100 Park Avenue
New York, New York, 10017
(212) 957-7600

*Attorneys for Fortress Investment Group LLC,*
*FCOF UL Investments, Fortress Credit Opportunities I LP,*
*Fortress Credit Corp., Concordia MAC29 Ltd., Concordia Partners L.P.,*
*Enterprise Fund Limited, and Concordia Institutional Multi-Strategy Fund, Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ x
In re                          :
                               :
Dreier LLP,                    :  Chapter 11
                               :  Bankruptcy Case No. 08-15051 (SMB)
            Debtor.            :
                               :
------------------------------ x


------------------------------ x
In re                          :
                               :
Marc S. Dreier,                :  Chapter 7
                               :  Bankruptcy Case No. 09-10371 (SMB)
            Debtor.            :
                               :
------------------------------ x

**OBJECTION OF ETON PARK, FORTRESS, AND CONCORDIA FUNDS
TO TRUSTEES' MOTIONS FOR APPROVAL OF AGREEMENTS**

TO: THE HONORABLE STUART M. BERNSTEIN,
    CHIEF UNITED STATES BANKRUPTCY JUDGE

Eton Park CLO Management 1, Eton Park CLO Management 2, Eton Park Fund, L.P., Eton Park Master Fund, Ltd. (collectively, the "Eton Park Funds"), Fortress Investment Group LLC, FCOF UL Investments, Fortress Credit Opportunities I LP, Fortress Credit Corp., (the "Fortress Funds"), Concordia MAC29 Ltd., Concordia Partners L.P., Enterprise Fund Limited, and Concordia Institutional Multi-Strategy Fund, Ltd. (collectively, the "Concordia Funds" and, together with the Eton Park Funds and the Fortress Funds, the "Joint Objectors"), creditors of Dreier LLP and Marc S. Dreier ("Dreier") and parties in interest in these cases, by and through their undersigned counsel, respectfully submit this objection to the motions of (a) the Chapter 11 Trustee (the "Ch. 11 Mot.") for (i) approval of a Settlement Agreement (the "GSO Settlement Agreement") by the Chapter 11 Trustee, the Chapter 7 Trustee, and GSO Capital Partners ("GSO"), (ii) approval of a Coordination Agreement between the Chapter 11 Trustee and the United States Attorney for the Southern District of New York, and (iii) an order barring parties in interest from asserting certain claims against GSO, its affiliates, and other unknown persons and entities (the "Bar Order"), and (b) the Chapter 7 Trustee for (i) approval of the GSO Settlement Agreement, and (ii) an order barring parties in interest from asserting certain claims against GSO, its affiliates, and other unknown persons and entities. In support of their objection, the Joint Objectors state:

**Preliminary Statement**

1. The motions before the Court must be denied, for three reasons.

2. *First,* both the Chapter 11 Trustee and the Chapter 7 Trustee seek extraordinary orders releasing claims of all parties in interest against nondebtor GSO, its affiliates and other unknown persons and entities relating to Dreier LLP, Dreier, or payments GSO received from accounts associated with Dreier LLP. Even assuming that a motion under Rule 9019 is ever a proper vehicle for obtaining a release of claims by parties in interest against a nondebtor after the Court of Appeals ruling in *Deutsche Bank AG* v. *Metromedia Fiber Network,*

*Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136 (2d Cir. 2005), the Chapter 11 and Chapter 7 Trustees have utterly failed to demonstrate the fairness of the nondebtor releases they seek.

3. *Second*, the Chapter 11 Trustee and Chapter 7 Trustees seek to compromise claims against a recipient of $196 million from accounts associated with Dreier LLP, without disclosing what investigation they have made concerning those transfers or the recipient's relationship with Dreier LLP and Dreier, what they learned about those matters, or the legal standards they applied in concluding that the proposed compromise is appropriate. Neither the Court nor parties in interest have been provided with information sufficient to determine that the Chapter 11 and Chapter 7 Trustees have exercised business judgment in the best interests of these estates.

4. *Third*, approval of the GSO Settlement Agreement would be highly inequitable unless the Chapter 11 and Chapter 7 Trustees also (i) release avoidance claims against the Joint Objectors and other hedge funds whose dealings with Marc S. Dreier and Dreier LLP appear to have been indistinguishable from those of GSO, except that GSO's earlier investments apparently were repaid with the later investments of the other hedge funds which are now the largest creditors of these estates, and (ii) afford those creditor hedge funds the benefit of any bar order ultimately entered. In return for a payment of $9.5 million that the Chapter 11 Trustee apparently intends to use to fund avoidance litigation against the hedge funds that were left with millions of dollars in losses, the Chapter 11 and Chapter 7 Trustees propose to allow GSO to retain payments equal to 94% of the money it initially paid to Dreier LLP. Such disparate treatment is at odds with the goal of equal treatment of Ponzi scheme victims and the very purpose of avoidance litigation, and would not be permitted under a plan of reorganization.

**Background**

I. **Criminal And Civil Proceedings Against Marc S. Dreier**

5. On December 7, 2008, Dreier was arrested and charged with selling fictitious promissory notes, purportedly issued by Solow Realty and Development Company and affiliated entities, to a number of hedge funds. On January 26, 2009, an indictment in the United States District Court for the Southern District of New York charged Dreier with conspiracy to commit securities fraud, securities fraud, and several counts of wire fraud. Two months later, after more information was revealed regarding Dreier's fraud and his use of Dreier LLP to further his scheme, a superseding indictment added charges that Dreier laundered the proceeds of his crime through Dreier LLP.

6. Upon Dreier's arrest, the Securities and Exchange Commission ("SEC") commenced civil proceedings against him and obtained an order appointing a receiver (the "Receiver") for his assets. A report filed by the Receiver on March 24, 2009, revealed that Dreier had received from his hedge fund victims hundreds of millions of dollars from the sale of approximately 85 fictitious promissory notes, ranging in amount from $200,000 to $60 million, and had used those funds, among other things, to operate Dreier LLP. (Declaration of Maureen A. Fitzgerald ("Fitzgerald Decl."), filed herewith, Ex. A at 28 (Report of the Receiver and Req. for Dissolution of Receivership, *SEC* v. *Dreier*, No. 08-Civ.-10617 (S.D.N.Y. filed Feb. 17, 2009)).) The Receiver estimated that from 2004 through 2008, Dreier received approximately $702,465,000 in fraud proceeds, funds that Dreier used to support a lavish lifestyle, operate Dreier LLP, and make payments to maintain an appearance that the fraudulent notes earned a return for their holders. The Receiver estimated that accounts associated with Dreier LLP disbursed approximately $430 million to holders of the fraudulent notes (*id*. at 32), 45% of which went to GSO.

7. On May 11, 2009, Dreier pled guilty to each count in the superseding indictment and admitted to stealing millions of dollars from various hedge funds and Dreier LLP

clients. Dreier was sentenced on July 13, 2009, to twenty years' imprisonment. In addition, Dreier was ordered to pay restitution to the victims of his crime in the total amount of $389,144,929.25. (Fitzgerald Decl. Ex. B (Second Am. Restitution Order, *United States* v. *Dreier*, No. 09-CR-085 (S.D.N.Y. Sept. 29, 2009)).)

8. The restitution order directs restitution to numerous hedge fund victims in an aggregate amount of approximately $338 million, including restitution to Concordia Funds in the amount of $22,297,222.33; Eton Park Funds in the amount of $71,345,223.45; and Fortress Funds in the amount of $84,430,895.56. (*Id.*)

## II. Claims Against Dreier LLP

9. In the Chapter 11 case commenced by Dreier LLP, the Claims Register shows 587 claims in the total amount of $569,382,800 filed before the bar date; 64.4% of that amount, or $366,830,399.14, was claimed by the following hedge fund victims:[1]

| Novator Credit Management Limited | $20,000,000 |
| Meyer Venture Partners, L.P. | $13,378,333.34 |
| Enterprise Fund Limited | $5,128,361.12 |
| Concordia MAC29 Ltd. | $2,452,694.44 |
| Concordia Partners L.P. | $9,810,777.89 |
| Concordia Institutional Multi-Strategy Fund, Ltd. | $4,905,388.88 |
| Eton Park CLO Management 1 | $19,705,807 |
| Eton Park CLO Management 2 | $24,384,952 |
| Eton Park Fund, L.P. | $10,903,914 |

---

[1] In addition, Perella Weinberg Xerion Partners Capital Management LP submitted a claim that is nominally unliquidated, and hence is shown on the Claims Register as $0.00, but reflects losses in the amount of $45 million.

| | |
|---|---|
| Eton Park Master Fund, Ltd. | $29,392,398 |
| Fortress Credit Opportunities I LP | $61,948,991.89 |
| FCOF UL Investments LLC | $63,716,035.03 |
| Heathfield Capital Limited | $101,102,745.55 |
| **Total Amount Claimed** | **$366,830,399.14** |

10. In the Chapter 7 case concerning Marc S. Dreier, the Claims Register reflects that 37 claims in the total amount of $429,854,841.57 were filed before the bar date; approximately 75% of that amount, or $325,464,615.81, was claimed by some of the above hedge fund victims. Claims Register, *In re Dreier*, No. 09-10371 (Bankr. S.D.N.Y. as of Jan. 25, 2010).

11. GSO did not file a claim. GSO did not suffer a loss. According to the Chapter 11 Trustee's motion, GSO paid accounts associated with Dreier LLP $165 million for fraudulent notes and received transfers from Dreier LLP attorney trust accounts of $196 million, including $62 million in the 90 day preference period. (Ch. 11 Mot. ¶ 8.)

12. Upon information and belief, despite the significant amount of losses suffered by each of the hedge fund victims, the Chapter 11 Trustee has issued to all or most of the hedge fund victims demands for repayment of amounts they received from the Dreier LLP Attorney Trust Account (the "Attorney Trust Account").

13. To the best of the knowledge, information, and belief of the Joint Objectors, there is no significant distinction between GSO's dealings with Dreier LLP and those of the Joint Objectors and the other hedge fund victims, other than the fact that GSO was paid back in full (apparently with proceeds of, *inter alia*, the fraud perpetrated upon the other hedge fund victims). Certainly no such distinction is identified in the motions before the Court.

### III. The Proposed Settlement and the Trustees' Motions for Approval

14. Before the Court are two settlement agreements: a Coordination Agreement between the Chapter 11 Trustee and the United States Attorney for the Southern District of New York and the GSO Settlement Agreement among the Chapter 11 Trustee, the Chapter 7 Trustee, and GSO.

15. Under the Coordination Agreement, the U.S. Attorney will surrender to the Chapter 11 Trustee certain seized artwork valued at an estimated $3 million and agree not to seek forfeiture of any proceeds of avoidance actions the Chapter 11 Trustee may bring against specified transferees of Dreier LLP, including the Joint Objectors and the other hedge fund victims. In return, the Chapter 11 Trustee agrees not to contest the forfeiture of specific property listed on the Preliminary Order of Forfeiture, dated July 13, 2009, or $30,895,027.78 that GSO is to forfeit under a consent order the U.S.U.S. Attorney has submitted to the District Court for approval.

16. Under the GSO Settlement Agreement, GSO will receive releases from the Chapter 11 Trustee and the Chapter 7 Trustee in exchange for payments of $9.5 million ($9,250,000 to the Chapter 11 Trustee and $250,000 to the Chapter 7 Trustee), conditioned on Court approval of both the GSO Settlement Agreement and the Coordination Agreement, and entry of orders barring parties in interest in both the Chapter 11 and Chapter 7 cases from asserting claims against GSO arising from its receipt of payments from accounts associated with Dreier LLP or otherwise relating to its dealings with Dreier LLP or Marc S. Dreier.

17. If GSO forfeits $31 million to the U.S. Attorney, pays $9.5 million to the Trustees, and receives releases and an injunction against creditor claims as proposed, GSO will retain repayment equal to 94% of the amounts it initially paid.

18. The Chapter 11 Trustee contends that the Coordination Agreement and the GSO Settlement Agreement are in the best interest of the estate. (Ch. 11 Mot. at ¶ 24.) The terms of the GSO Settlement are, according to the Trustee, reasonable because the settlement

will relieve the trustee of "expensive and complex litigation with GSO, in circumstances where GSO has already agreed to pay millions of dollars to the Government to 'settle' the forfeiture" of GSO's profits. (*Id.* at ¶ 17.) In addition, the Chapter 11 Trustee explains that the Bar Order is in the best interest of the estate because without it victims of Dreier's crime may attempt to sue GSO for funds traceable to monies taken from the other victims. (*Id.* at ¶ 27.) According to the Chapter 11 Trustee, the Bar Order is necessary to ensure the "ratable and equitable distribution of the Debtor's estate and the Chapter 7 estate to their creditors." (*Id.*) In addition, the Chapter 11 Trustee states that the "money recovered from GSO under the GSO Agreement *and in any future avoidance actions* will be . . . available for distribution to all the creditors of the estate, the vast majority of which are victims of Marc Dreier's crimes." (*Id.* (emphasis added).) As explained below, these assertions do not withstand scrutiny.

## OBJECTIONS

### I. THE NONDEBTOR RELEASES THE TRUSTEES SEEK ARE CONTRARY TO LAW.

19. Both the Chapter 11 Trustee and the Chapter 7 Trustee seek not only to compromise their claims against GSO, but also to cut off any rights that other parties in interest may have arising from GSO's dealings with Dreier LLP and Marc S. Dreier. The requested bar orders are both procedurally and substantively improper on multiple grounds.

20. The Court of Appeals has made clear that, even in the context of a Chapter 11 plan of reorganization, a nondebtor release is appropriate "only in rare cases," under circumstances "which may be characterized as unique," and "should not be approved absent the finding that truly unusual circumstances render the release terms important to success of the plan."[2] *Deutsche Bank AG* v. *Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber*

---

[2] Indeed, some Circuits find that "nondebtor releases are *prohibited* by the Code, except in the asbestos context." *In re Metromedia*, 416 F.3d at 141 (citing *Resorts Int'l, Inc.* v. *Lowenschuss* (*In re Lowenschuss*), 67 F.3d 1394, 1401-02, 1402 n.6 (9th Cir. 1995) and

*Network, Inc.*), 416 F.3d 136, 141–43 (2d Cir. 2005). Moreover, "a nondebtor release is a device that lends itself to abuse" because a release can operate to shield a nondebtor from liability to third parties. *Id.* at 142. Such "potential for abuse is heightened" by overly-broad nondebtor releases which provide for "blanket immunity." *Id*. An injunction against nondebtor claims may not be entered as a routine matter. *In re Adelphia Commc'ns, Inc.*, 368 B.R. 140, 267 (Bankr. S.D.N.Y. 2007). In the context of a plan, a nondebtor release may be appropriate if "the estate received *substantial* consideration" or if the enjoined claims are channeled to a settlement fund rather than extinguished. *Metromedia*, 416 F.3d at 142 (citations omitted) (emphasis added).

21. Here, no plan has even been proposed. The Chapter 11 and Chapter 7 Trustees proceed under Rule 9019, thereby affording creditors none of the protections of the plan process. They nonetheless seek not only to compromise claims of their estates, but also to release claims of all parties in interest against nondebtor GSO. They provide no information about their investigation, if any, concerning what such claims might be, nor do they attempt to demonstrate the fairness of the releases they seek to other parties in interest. They instead rely upon a naked assertion of business judgment, in a context in which the Chapter 11 and Chapter 7 Trustees lack authority to exercise such judgment. *See In re Granite Partners, L.P.,* 194 B.R. 318, 324 (Bankr. S.D.N.Y. 1996) (trustee lacks standing to assert claims belonging to creditors).

22. Because the Chapter 11 and Chapter 7 Trustees seek not merely to compromise claims of the estate, but seek to cut off claims of parties in interest against nondebtors, they must be held to a higher standard of fairness than that applicable to an ordinary Rule 9019 motion. If the order they seek is permissible at all, it is permissible only upon a showing of fairness to all the affected parties, a showing that has not been made.

23. In addition, the breadth of the releases sought precludes their approval. The releases would provide blanket immunity to unknown parties and are therefore in direct

---

*Landsing Diversified Props.–II* v. *First Nat'l Bank and Trust Co. of Tulsa* (*In re W. Real Estate Fund, Inc.*), 922 F.2d 592, 600-02 (10th Cir. 1990) (*per curiam*)).

contradiction to *Metromedia*'s limitations. First, the release is not limited to claims arising from GSO's receipt of funds, but also extends to any claim arising from GSO's dealings with Dreier LLP or Marc S. Dreier. Second, the release would apply to "any and all allegations of liability or damages . . . of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise." (Settlement Agreement at 5, ¶ 2.) Third, the order enjoins all of the above claims against the following entities: "the GSO Parties, their affiliates, directors, officers, employees, representatives and agents, and respective past or present direct or indirect stockholders, affiliates, limited partners, investors or other equity holders, and any entity controlled or managed by any GSO party, and each of their successors, assigns and transferees and each of their respective past or present officers, directors, employees, agents, legal representatives, privies, representatives, accountants, attorneys, and any party subject to an indemnity relating to Marc Dreier, Dreier LLP, and the Note Fraud Funds . . . ." (*Id.*)

        24.     The Chapter 11 Trustee characterizes the release as "narrow" because it is allegedly not a bar against unknown third parties, but in fact the release it seeks is exactly the type of blanket bar that *Metromedia* proscribes. *See* 416 F.3d at 142 (cautioning against the heightened potential for abuse when releases afford "blanket immunity"). The release insulates not only GSO but also among others, unspecified affiliates, past or present officers, and their successors, assigns and transferees, apparently including Blackstone Group—a public company that is affiliated with GSO—and its employees, agents, past and present stockholders, and the agents, accounts and attorneys of each of the foregoing. Indeed, the release apparently would extend to Dreier LLP itself, to the extent it was ever counsel to a released party, even if that representation had nothing to do with the note fraud. Therefore, the Court must reject the bar orders the Chapter 11 and Chapter 7 Trustees seek because they fail, as a matter of law, to meet the standards set forth in this Circuit for approval. *Id.*; *see also In re Adelphia*, 368 B.R. at 267-69.

25. The Chapter 11 Trustee contends that the requested bar order "reflects nothing more than the fact that transfers from the Debtor to GSO were transfers of the Debtor's interests in estate property." (Ch. 11 Mot. at ¶ 28.) Of course, there was no estate, and no estate property, when the transfers were made. The Chapter 11 Trustee also acknowledges that the transfers in question were made from attorney trust accounts (Ch. 11 Mot. at ¶ 7), and acknowledges by citation to *In re Cannon,* 277 F.3d 858, 850 (6th Cir. 2002), that funds held by an attorney in trust are not the attorney's property. (Ch. 11 Mot. at ¶ 27.) Clearly there has been no determination concerning the interest of Dreier LLP in the funds transferred to GSO, or in the conflicting claims of others to those funds. The Chapter 11 Trustee may have satisfied herself that funds transferred from the attorney trust account were property of Dreier LLP, but she has recited no factual basis for that conclusion, much less a basis that would justify a bar order entered on a motion under Rule 9019. Finally, the Chapter 11 Trustee's characterization of the bar order she seeks is plainly inaccurate, as she seeks not only to bar claims to ownership of the funds transferred from the attorney trust accounts, but *any* claim arising from GSO's dealings with Dreier or Dreier LLP. She has advanced no support whatsoever for a release of that breadth.

26. The bar order sought by the Chapter 7 Trustee is wholly unsupported. In exchange for a payment of $250,000, the Chapter 7 Trustee seeks an order barring creditors from litigating claims to $196 million paid to GSO from Dreier LLP attorney trust accounts or any other claims based on GSO's dealings with Dreier or Dreier LLP. The Chapter 7 Trustee does not even contend that the funds paid from the attorney trust account were property of Marc S. Dreier. He has no authority whatsoever for the relief he seeks.

II. **THE CHAPTER 11 TRUSTEE'S DISCLOSURE OF FACTS REGARDING HER INVESTIGATION OF THE AVOIDANCE CLAIMS AGAINST GSO—RECIPIENT OF $196 MILLION IN TRANSFERS—AND THE LEGAL STANDARDS SHE APPLIED IN REACHING HER DECISION TO SETTLE ARE INSUFFICIENT TO PERMIT APPROVAL OF THE SETTLEMENT.**

27. "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Rule 9019 has a clear purpose to "prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court." *Motorola, Inc.* v. *Official Comm. Of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 461 (2d Cir. 2007) (quoting *In re Masters Inc.*, 141 B.R. 13, 16 (Bankr. E.D.N.Y. 1992)). To be approved, a settlement must withstand judicial scrutiny and it must be determined that the settlement is fair and equitable and is in the best interest of the estate.³ *In re Best Prods. Co., Inc.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994). A court cannot make a determination as to whether the settlement is in the best interest of its creditors if key issues are glossed over and key facts are omitted. *See In re Remsen Partners, Ltd.*, 294 B.R. 557, 564 (Bankr. S.D.N.Y. 2002) (explaining that there can be no informed and independent judgment regarding the approval of a settlement when key facts are omitted); *In re Lion Capital Group,* 49 B.R. 163, 189-190 (Bankr. S.D.N.Y. 1985) (noting that a court cannot find that a settlement fits within the lowest bounds of reasonableness when facts about the probability of the success of certain claims are glossed over and key facts are omitted). Therefore, a settlement

---

³ In determining whether a settlement is fair and equitable courts look to the following factors: "(1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation . . . ; (3) the paramount interest of the creditors . . . ; (4) whether other parties in interest support the settlement; (5) the competency and experience of the counsel supporting the experience and knowledge of the bankruptcy court judge reviewing the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arms length bargaining." *In re Iridium*, 478 F.3d at 462.

must be denied if there are insufficient facts to determine whether the settlement is fair and in the best interest of its creditors. *Compare In re Lion Capital*, 49 B.R. at 190 (denying settlement without prejudice because the record was insufficient for the court to determine if the settlement was in the best interest of the estate), *with In re Adelphia Commc'n. Corp.,* 327 B.R. 143 (Bankr. S.D.N.Y. 2005) (approving settlement on the basis of the detailed information on the settlement process provided to the court by the parties).

28. The Chapter 11 Trustee fails to provide the Court and parties in interest with any information about her investigation of GSO's dealings with Dreier and Dreier LLP, or her investigation concerning possible competing claims to funds in the Attorney Trust Account. She has apparently concluded that GSO provided fair consideration for the funds it received from the Attorney Trust Account and acted in good faith, but she never discusses the point or provides any discussion concerning her conclusion, including whether she has any basis for her proposed different treatment of the other hedge funds defrauded by Dreier. She is permitting GSO to retain some two-thirds of the amounts received during the preference period, net of the amount GSO has consented to forfeit, but she has provided no discussion concerning any defense GSO might have to her preference claims and whether she would consider a comparable settlement with the other defrauded hedge funds in the best interests of the estate. While the Chapter 11 Trustee justifies these agreements because of the complexities of the issues presented by potential litigation in this case, she never explains what they are or how she evaluates her claims and GSO's defenses. Indeed, the Chapter 11 Trustee fails even to acknowledge that her proposed settlement would leave GSO with a return of 94% of the funds it paid to accounts associated with Dreier LLP, a far smaller loss than that sustained by the other hedge funds defrauded by Dreier, or her rationale for entering into such a settlement with GSO to fund avoidance litigation against other hedge funds whose conduct was apparently indistinguishable from GSO's.[4]

---

[4] The Government maintains that the GSO Agreement and the related consent order of forfeiture have been structured "to prevent the GSO Facilities from becoming a victim of

29. Absent meaningful disclosure concerning her investigation of possible claims against GSO, her conclusions concerning those claims, and her rationale for accepting a modest percentage recovery on her preference claims against GSO and no recovery at all on her fraudulent conveyance claims, notwithstanding her apparent intention to pursue such claims against other hedge fund victims of Dreier, the Chapter 11 Trustee's proposed settlement with GSO cannot be approved. *See Protective Comm. for the Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968) ("There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."); *In re Remsen Partners*, 294 B.R. at 567 ("[T]he Rule 9019(a) motion . . . should provide a reasonably detailed explanation of the trustee's reasons for nevertheless agreeing to such a compromise."); *In re Lion Capital Group*, 49 B.R. at 190 ("Complexity and the presence of open issues do not excuse a failure to bring forth facts and thereby effectively negate the Rule 9019's requirement of a hearing where sufficient evidence is to be presented to permit appropriate analysis.").

### III. APPROVAL OF THE SETTLEMENT WOULD BE INEQUITABLE UNLESS THE CHAPTER 11 TRUSTEE RELEASES HER AVOIDANCE CLAIMS AGAINST THE OTHER HEDGE FUNDS AND AFFORDS THEM THE BENEFIT OF ANY BAR ORDER THIS COURT ENTERS.

30. Protection of creditor interests is a major consideration in determining whether to approve a settlement. *In re Matco Elecs. Group, Inc.*, 287 B.R. 68, 77 (Bankr. N.D.N.Y. 2002); *Tindall* v. *Mavrode* (*In re Mavrode*), 205 B.R. 716, 721 (D.N.J. 1997) ("[P]rotecting the interests of the creditors is paramount."). If the settlement is not likely to

---

Dreier's offenses." (Fitzgerald Decl. Ex. C at 9 (Government's Mem. in Supp. of Application for Consent Order of Forfeiture, *United States* v. *Dreier*, No. 09 CR 85, (S.D.N.Y. filed Dec. 23, 2009)).) That objective is understandable, but it hardly justifies an agreement that would leave the real victims of Dreier's offenses, who suffered enormous losses, enmeshed in further litigation funded by the Government's and the Chapter 11 and Chapter 7 Trustees' proposed agreements.

result in the equitable distribution of settlement proceeds to creditors, then the settlement provides no benefit to the estate. *See In re Remsen Partners*, 294 B.R. at 566 (noting that the benefit to the estate would be illusory because the creditors are not likely to receive any distribution of the settlement proceeds). In other words, such an outcome *would not be in the best interest* of the estate because the estate stands to gain nothing.

31. Public policy favors pro rata distributions to victims of Ponzi schemes that were similarly situated with respect to their relationship *to the defrauders. Cunningham* v. *Brown*, 265 U.S. 1, 13 (1924) (approving avoidance actions against the investors in Charles Ponzi's scheme who recouped more than their original principal because the situation "call[s] strongly for the principle that equality is equity, and this is the spirit of the bankrupt law. Those who were successful in the race of diligence violated not only its spirit, but its letter, and secured an unlawful preference."); *Donell* v. *Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("The 'winners' in the Ponzi scheme, even if innocent of any fraud themselves, should not be permitted to 'enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky.'" (quoting *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir. 1991))); *SEC* v. *Infinity Group Co.*, No. 06-4158, 226 Fed. Appx. 217, 218-19 (3d Cir. Apr. 5, 2007) (unpublished) ("[T]he Courts of Appeals repeatedly have recognized that *pro rata* distribution of a defrauder's assets to multiple victims of the fraud is appropriate . . . . This is so even when circumstances that do not provide any equitable basis to distinguish between investors make it possible to trace particular investors' assets." (internal citations omitted)); *SEC* v. *Credit Bancorp, Ltd.*, 290 F.3d 80, 89 (2d Cir. 2002) ("[T]he use of a *pro rata* distribution has been deemed especially appropriate for fraud victims of a 'Ponzi scheme,' in which 'earlier investors' returns are generated by the influx of fresh capital from unwitting newcomers rather than through legitimate investment activity.' In such a scheme, whether at any given moment a particular customer's assets are traceable is 'a result of the merely fortuitous fact that the defrauders spent the money of the other victims first.'"); *SEC* v. *Byers*, 637 F.2d 166, 176 (S.D.N.Y. 2009) ("[P]ro rata distributions are the most fair and most favored in receivership cases."). The Chapter 11 Trustee agrees that a *pro rata*

distribution "is the <u>preferred</u> result in Ponzi scheme cases." Chapter 11 Trustee's Objection to Paul Gardi and Alex Interactive Media LLC's Motion for an Order Granting Relief from the Automatic Stay (Chapter 11 case Docket No. 354), ¶ 19 (emphasis in original).

32. Equity among creditors who are similarly situated is a central policy of the Bankruptcy Code. *Beiger* v. *IRS*, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property."). It so follows that a settlement which promotes inequality among creditors who are similarly situated and favors one creditor above the others must fail. *In re Mavrode*, 205 B.R. at 721 ("A proposed settlement will necessarily fail where one creditor benefits at the other creditors' expense.").

33. Moreover, if a settlement departs from the substantive requirements of a Chapter 11 plan, including requirements that the plan be fair and equitable and not discriminate unfairly, any such departure must be justified by the parties, and the reviewing court must articulate the reasons for approval notwithstanding such departure. *See In re Iridium,* 478 F.3d. at 462–67 (vacating court's approval of a settlement and remanding for the bankruptcy court to explain why the settlement's deviation from the Bankruptcy Code's priority rule was justified).

34. Finally, the whole point of providing a trustee with the power to avoid preferential transfers springs from a concern for equitable treatment of creditors. *Lawson* v. *Ford Motor Co.* (*In re Roblin Indus., Inc.*), 78 F.3d 30, 40 (2d Cir. 1996) ("The trustee's power to avoid preferential transfers springs from a concern for the equitable treatment of all creditors . . . . '[T]he preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of its class is required to disgorge so that all may share equally.'" (quoting H. Rep. No. 595, 95th Cong., 1st Sess. 177-78 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6138)). The Chapter 11 Trustee's proposal to enter into a settlement with GSO that permits it to retain 94% of the amount it paid to accounts associated with Dreier LLP, while retaining avoidance claims against hedge funds whose dealings with Dreier LLP were similar to

those of GSO but who were repaid far smaller percentages, or none, of the amounts they paid to Dreier LLP, discriminates unfairly against those hedge funds and is inconsistent with the purpose for which Congress recognized avoidance claims in the first place.

35. Based upon the information provided by the Chapter 11 Trustee, the benefits bestowed upon GSO are as follows: (1) GSO keeps 94% of its principal investment; (2) GSO and its affiliates insulated from further litigation by any party in interest arising from amounts GSO received from accounts associated with Dreier LLP or otherwise relating to its dealings with Dreier LLP or Dreier; and (3) GSO is insulated from any avoidance action the Chapter 11 Trustee would otherwise have against GSO. At the same time, (1) the hedge fund victims will likely never come close to recovering 94% of their principal investment, either through bankruptcy or criminal restitution; (2) the hedge fund victims stand to lose even more through the defense of avoidance litigation the Chapter 11 Trustee apparently intends to bring—a near certainty if the Chapter 11 Trustee receives the $9.25 million from GSO pursuant to the terms of the settlement; and (3) the hedge fund victims are precluded from pursuing any claims against GSO, its affiliates, its stockholders and their agents. Such an outcome, which clearly favors one creditor, GSO, over the remaining hedge fund victims, cannot be fair and equitable. *See In re Mavrode*, 205 B.R. at 721 ("[P]rotecting the interest of the creditors is paramount. . . . A proposed settlement will necessarily fail where one creditor benefits at the other creditors' expense.").

36. Accordingly, under the terms of the settlement presented by the Chapter 11 Trustee, one creditor is clearly favored over a *class* of creditors who are similarly situated.

37. Moreover, the Chapter 11 Trustee's retention of avoidance claims against the other defrauded hedge funds is not of substantial value to the administration of the Chapter 11 estate. Even successful pursuit of preference claims against those hedge funds will at best result in a *de mimimis* adjustment of recoveries. In this case, the total value of claims that the hedge funds have made against the estate is $366,830,399.14, representing approximately 64% of the $596,382,800 in claims made against the estate. Thus two-thirds of any amounts the

Chapter 11 Trustee recovers from the hedge funds, net of attorneys fees the Chapter 11 Trustee incurs in pursuit of such recoveries, will ultimately be distributed back to them under a plan. The Chapter 11 Trustee's pursuit of avoidance claims against the hedge funds will not only result in highly discriminatory treatment of them as compared to GSO, it will also have minimal effect upon recoveries achieved by the non-hedge fund victims of Dreier's fraud. Furthermore, because the hedge fund transferees have what they believe to be sound defenses to the Chapter 11 Trustee's potential avoidance claims, the Chapter 11 Trustee's efforts are likely to result only in expensive litigation bringing in no net value to the estate. Indeed, the only parties who would benefit significantly from the pursuit of avoidance recoveries from the hedge funds will be the Chapter 11 Trustee and her counsel.

38. Approval of the GSO Settlement should therefore be conditioned upon the Chapter 11 Trustee's release of her avoidance claims against the other hedge funds, and any bar order ultimately entered for the benefit of GSO should also be extended to the benefit of the hedge fund victims.

**Conclusion**

For the foregoing reasons, the motions for approval of the Coordination Agreement and the GSO Settlement Agreement, and for entry of bar orders for the benefit of GSO and other unknown entities and persons, should be denied in all respects. Alternatively, approval should be conditioned upon the Chapter 11 Trustee's release of avoidance claims against the other hedge funds, and any bar order ultimately entered should benefit the hedge fund victims as well as GSO.

Dated: January 27, 2010
      New York, New York

/s/ Bruce E. Clark
Bruce E. Clark
William L. Farris
Maureen A. Fitzgerald
SULLIVAN & CROMWELL LLP
125 Broad Street
New York , New York 10004-2498
(212) 558-4000

*Attorneys for Eton Park CLO Management 1, Eton Park CLO Management 2, Eton Park Fund, L.P., and Eton Park Master Fund, Ltd.*


/s/ Mark S. Cohen
Mark S. Cohen
Brett D. Jaffe
Daniel H. Tabak
Donald M. Badaczewski
COHEN & GRESSER LLP
100 Park Avenue
New York, New York, 10017
(212) 957-7600

*Attorneys for Fortress Investment Group LLC, FCOF UL Investments, Fortress Credit Opportunities I LP, Fortress Credit Corp., Concordia MAC29 Ltd., Concordia Partners L.P., Enterprise Fund Limited, and Concordia Institutional Multi-Strategy Fund, Ltd.*