**Hearing Date: September 23, 2010 at 10:00 a.m.**
**Objection Deadline: September 16, 2010 at 12:00 p.m.**

ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400
Craig Carpenito
Alexander S. Lorenzo
-and-
John E. Stephenson, Jr. (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
Tel: (404) 881-7000

*Attorneys for Paul Gardi and*
*Alex Interactive Media, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IN RE:

DREIER LLP

                            Debtor.

Chapter 11

Case No. 08-15051 (SMB)

-------------------------------------------------------------------X
IN RE:

MARC S. DREIER

                            Debtor.

Chapter 7

Case No. 09-10371 (SMB)

-------------------------------------------------------------------X

## THE GARDI PARTIES' MOTION FOR LEAVE TO TAKE
## THE DEPOSITION OF FEDERAL PRISONER MARC S. DREIER

Paul Gardi and Alex Interactive Media, LLC (the "Gardi Parties"), by and through their

undersigned counsel, move the Court for an order, pursuant to Rule 30(a)(2)(B) of the Federal

Rules of Civil Procedure, granting the parties leave to take the oral deposition of Marc S. Dreier

("Dreier"), the sole equity partner of Dreier LLP, debtor in above-captioned Chapter 11

bankruptcy case, No. 08-15051, who is confined in the Federal Correctional Institution in

Sandstone, Minnesota, and respectfully show as follows:

## PRELIMINARY STATEMENT

The Gardi Parties seek the deposition testimony of Dreier in connection with the

objection of Sheila M. Gowan (the "Chapter 11 Trustee"), in her capacity as the Chapter 11

Trustee of Dreier LLP, to the proofs of claim (Claim Nos. 374, 440) filed by the Gardi Parties in

the Chapter 11 bankruptcy and in connection with the objection of Salvatore LaMonica (the

"Chapter 7 Trustee") (collectively, with the Chapter 11 Trustee, the "Trustees"), in his capacity

as the Chapter 7 Trustee of Marc S. Dreier, to the proofs of claim (Claim Nos. 36, 37)

(collectively, with Claim Nos. 374 and 440, the "Proofs of Claims") filed by the Gardi Parties in

the Chapter 7 bankruptcy (collectively, the "Objections").  Dreier's testimony is relevant and

necessary to the Gardi Parties' defense of the Trustees' Objections to the Gardi Parties' Proofs of

Claims and is within the broad purview of Rule 26(b)(1).  Additionally, the reasons provided in

Rule 26(b)(2) to limit discovery are inapplicable under the circumstances of this case.  The

Trustees' Objections expressly challenge the existence of an attorney-client relationship between

the Gardi Parties and Dreier and/or Dreier LLP.  Contrary to the Trustees' Objections, Dreier

was the primary attorney at Dreier LLP responsible for handling the Gardi Parties' settlement

with JANA.  Accordingly, he is the witness best able to answer questions related to (i) the

existence of the attorney-client relationship; (ii) the scope of Dreier's authority; (iii) the nature of

his actions in his capacity as counsel for the Gardi Parties; and (iv) the content of his

communications in his capacity as counsel for the Gardi Parties.  Dreier's testimony cannot be

obtained by any other manner and will not be duplicative of any other evidence or testimony in

this case.

## JURISDICTION

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue of this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1409.

## FACTUAL BACKGROUND[1]

*The Compensation Dispute with JANA*

3.      In or about July 2008, the Gardi Parties retained the law firm of Dreier LLP to

represent them in connection with the resolution of a compensation dispute between the Gardi

Parties and JANA Partners, Inc. ("JANA") (the "Compensation Dispute").  The Dreier LLP

lawyer responsible for this matter was Marc Dreier.

4.      In early October 2008, Gardi learned that JANA had agreed to the financial

component of a potential settlement, which required JANA to pay $6,349,093.00 to the Gardi

Parties.  Notwithstanding the agreement in principal regarding the basic economics of a potential

settlement, there remained a number of material terms that had to be agreed upon before a

settlement could be finalized.

*Dreier Steals the Settlement Funds JANA Intended for the Gardi Parties*

5.      In furtherance of Dreier's fraudulent scheme to steal the settlement payment

JANA was required to make to the Gardi Parties, Dreier falsely represented to JANA that the

Gardi Parties were willing to concede their position on all of the outstanding disputed terms and

settle the dispute with JANA entirely on JANA's conditions.

---

[1] These facts are as set forth in the Gardi Parties Proofs of Claims and in the Gardi Parties' prior motions in this action.

6.      At the same time, Dreier falsely represented to Gardi that JANA was willing to concede its position and settle those same remaining disputed provisions on Gardi's terms. Dreier then forwarded Gardi a copy of the settlement agreement reflecting the fact that JANA had accepted Gardi's final demands.

7.      As a result, Gardi signed the agreement both in his individual capacity and on AIM's behalf as its managing member (the "Gardi Parties' Agreement") believing that the dispute had been settled on his terms and that the $6.3 million Gardi was owed by JANA would be paid directly to him (and not to Dreier) pursuant to his instructions.

8.      When the settlement funds did not arrive in Gardi's account, he contacted Dreier several times over the next few weeks seeking an update regarding the timing for JANA's payment and also provided appropriate wiring instructions for payment directly to his bank accounts.  Each time, Gardi was assured that payment was imminent, but given a different reason for the current delay.  Eventually, Dreier told Gardi that JANA was refusing to pay the funds until the Gardi Parties reached a settlement with another third-party in a related but separate dispute.

9.      Unbeknownst to Gardi, during this same timeframe, Dreier forged Gardi's signature and a notarization on an entirely different "settlement agreement," which Gardi had neither seen nor authorized and which contained all of JANA's terms (the "Unauthorized Agreement").

10.      Although the Unauthorized Agreement contained certain materially different terms than the version of the agreement Dreier had provided to Gardi, it did require that the $6,349,093.00 in settlement funds to be paid by JANA be delivered at the direction of the Gardi Parties.

- 4 -

11.    On or about October 14, 2008, without Gardi's knowledge, consent or authorization, Dreier apparently requested that JANA wire the $6,349,093.00 in settlement funds intended solely for the benefit of the Gardi Parties to a trust account at JP Morgan Chase Bank controlled by Dreier and bearing Account Number xxx-xxx-xx5-966 (the "5966 Account"). Dreier indicated that the 5966 Account was an "Attorney Trust Account" and that the Wire Amount should be sent "F/B/O Gardi."

12.    On or about October 15, 2008, again without Gardi's knowledge, consent or authorization, JANA transmitted the $6,349,093.00 to the 5966 Account (the "Wire Amount").

13.    The $6.3 million was never received by the Gardi Parties. Instead, it was stolen by Dreier and converted for his own purposes.

14.    The Gardi Parties did not learn of the Unauthorized Agreement or the transmittal of the Wire Amount to the 5966 Account until after Dreier was arrested. No portion of the Wire Amount was ever transferred to the Gardi Parties by the Dreier Parties. Within two days after the receipt of the Wire Amount, Dreier conveyed the Wire Amount (now the Stolen Settlement Funds) to a discrete number of identifiable recipients.

15.    At no time did the Gardi Parties authorize Dreier or Dreier LLP to settle its dispute with JANA on the terms set forth in the Unauthorized Agreement or authorize Dreier or Dreier LLP to take receipt of any funds, including specifically the Stolen Settlement Funds. Similarly, the Gardi Parties did not consent to, and had no knowledge of, the Dreier or Dreier LLP's transfer of the Stolen Settlement Funds to any third-parties.

*The Chapter 11 Bankruptcy*

16.    On December 16, 2008, Dreier LLP filed for Chapter 11 reorganization.

17.     On December 30, 2008, the United States Trustee for the Southern District of
New York appointed Sheila M. Gowan as the chapter 11 trustee for the Dreier LLP estate, which
appointment was approved by the Court on January 9, 2009.

18.     On March 31, 2009, the Gardi Parties filed Proofs of Claims (Nos. 374, 440) in
the Dreier LLP bankruptcy, true and accurate copies of which are attached hereto as Exhibit A
and Exhibit B.

*The Chapter 7 Bankruptcy*

19.     On January 26, 2009, Marc S. Dreier filed for Chapter 7 liquidation.

20.     On March 2, 2009, the United States Trustee for the Southern District of New
York appointed Salvatore LaMonica as the chapter 7 trustee for the Marc S. Dreier estate, which
appointment was approved by the Court on March 13, 2009.

21.     On January 19, 2010, the Gardi Parties filed Proofs of Claims in the Marc S.
Dreier bankruptcy (Nos. 36, 37), true and accurate copies of which are attached hereto as Exhibit
C and Exhibit D.

*The Trustees' Objections*

22.     On August 6, 2010 the Chapter 11 Trustee objected to the Gardi Parties' Proofs of
Claims filed in the Chapter 11 bankruptcy and moved for an order disallowing and expunging
the Gardi Parties' Proofs of Claims in their entirety.  A true and accurate copy of the Chapter 11
Trustee's Objection is attached hereto as Exhibit E.  In her Objection, the Chapter 11 Trustee
asserts that:

> A review of the Debtor's books and records, however, does not
> identify either Gardi or AIM as a client of DLLP. Moreover,
> DLLP's billing records do not reflect that any DLLP attorney or
> staff billed any time to a matter for which the Gardi Parties were a
> client, nor has the Trustee located any engagement letter. The

> Trustee is continuing to investigate whether the Gardi Parties were
> actually DLLP clients.

Chapter 11 Trustee's Objection, at ¶ 6.

23.    Additionally, in the discovery requests the Chapter 11 Trustee served on the Gardi

Parties contemporaneously with the filing of the Objection, the Trustee requested that the Gardi

Parties "[a]dmit that DLLP was not Your attorney in connection with the Dispute" and "[a]dmit

that DLLP provided no services to You in connection with the Dispute."

24.    On August 27, 2010 the Chapter 7 Trustee also objected to the Gardi Parties'

Proofs of Claims filed in the Chapter 7 Bankruptcy and moved for an order disallowing and

expunging the Proofs of Claims in their entirety.  The Gardi Parties' Proofs of Claims filed in the

Chapter 7 Bankruptcy are substantively identical to those filed in the Chapter 11 Bankruptcy. A

true and accurate copy of the Chapter 7 Trustee's Objection is attached hereto as Exhibit F.  The

Chapter 7 Trustee's objection asserts that "Even assuming, *arguendo*, that the Gardi Parties are

correct and that the Debtor engaged in unauthorized actions in signing the Fraudulent Settlement

Agreement on the Gardi Parties' behalf, they still must demonstrate that they suffered actual damages

arising from those alleged wrongs."  Chapter 7 Trustee's Objection, at ¶ 11.

## **LEGAL STANDARD**

25.    The deposition of a person confined in prison may be taken only with leave of

court.  Fed. R. Civ. P. 30(a)(2)(B).  "[T]he court must grant leave to the extent [the deposition

testimony is] consistent with Rule 26(b)(2).  Fed. R. Civ. P. 30(a)(2) (emphasis added).  *See also*

*Atkinson v. Goord*, 2009 U.S. Dist. LEXIS 27851, at *3 (S.D.N.Y. Apr. 2, 2009); *Miller v. Bluff*,

131 F.R.D. 698 (M.D. Pa. 1990).

## ARGUMENT

26.     The Gardi Parties' motion for an Order granting leave to take the deposition of Marc S. Dreier should be granted because none of the limitations set forth in Rule 26(b)(2) counsel against issuing the requested relief.  Furthermore, Dreier's testimony is necessary and relevant because this is a contested matter and the Trustees' Objections to the Gardi Parties' Proofs of Claims have placed at issue key facts uniquely within the personal knowledge of Dreier and to which only Dreier can provide testimony.

### A.      Dreier's Testimony is Relevant and Necessary to the Claims and Issues in this Litigation.

27.     The deposition of Dreier should proceed because the testimony sought is relevant and necessary to the claims and issues in this litigation. *See* Fed. R. Civ. P. 26(b)(1) ("the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").  *See also United States v. International Business Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974) (finding that the range of discovery permitted by Rule 26(b)(1) is "exceedingly broad" and that "discovery is to be considered relevant where there is any possibility that the information sought may be relevant to the subject matter of the action").

28.     Dreier's testimony is relevant because he has personal knowledge of events giving rise to the Gardi Parties' Proofs of Claim in this litigation, including but not limited to: (i) Dreier LLP's retention of the Gardi Parties in connection with the Dispute; (ii) Dreier LLP and/or Marc S. Dreier's false representations to JANA regarding the settlement of the Dispute and the Fraudulent Settlement Agreement; (iii) Dreier LLP and/or Marc S. Dreier's false representations to the Gardi Parties regarding the settlement of the Dispute; (iv) Dreier LLP or Marc S. Dreier's authority to settle the Dispute on the terms set forth in the Stolen Settlement

Agreement; (v) Dreier LLP and/or Marc S. Dreier's instructions to JANA regarding the Wire

Amount and the 5966 Account; (vi) conversion of the Stolen Settlement Funds; and (vii)

distribution of the Stolen Settlement Funds to third parties.

29.     Both of the Trustees have objected to the Gardi Parties' Proofs of Claims and seek

to have them disallowed in their entirety.  In order to defend such allegations and establish the

facts essential to their Proofs of Claims, Dreier's testimony is necessary.  The Chapter 11

Trustee's objection directly questions whether the Gardi Parties actually retained Dreier or

Dreier LLP as legal counsel, and asserts that "the Debtor's books and records . . . [do] not

identify either Gardi or AIM as a client of DLLP. Moreover, DLLP's billing records do not

reflect that any DLLP attorney or staff billed any time to a matter for which the Gardi Parties

were a client, nor has the Trustee located any engagement letter."  *See* Chapter 11 Trustee's

Objection, at ¶ 6.  Additionally, the Chapter 7 Trustee's objection argues that the Gardi Parties

did not suffer actual damages from Dreier or Dreier LLP's wrongdoing because JANA had the

risk of loss on the transfer of the Stolen Settlement Funds. *See* Chapter 7 Trustee's Objection, at

¶¶ 11-12, 16-17.  This argument is based on the contention that Dreier lacked actual or apparent

authority to bind the Gardi Parties to a settlement; such issue is a fact-intensive inquiry that

requires examination of evidence uniquely within the knowledge of Dreier, including (i) the

existence of an attorney-client relationship between Dreier and the Gardi Parties; (ii) the scope of

Dreier's authority; (iii) the nature of the actions taken by Dreier on behalf of the Gardi Parties;

and (iv) the content of the communications made by Dreier on behalf of the Gardi Parties.

**B.     Dreier's Testimony is Not Duplicative and Cannot be Obtained from Other Sources.**

30.     None of the enumerated situations in Rule 26(b)(2) that require a court to limit the

scope of discovery are present in this situation.  In particular, Dreier's testimony cannot be

obtained by any other manner, and it will not be duplicative of any other evidence or testimony in this litigation. Fed. R. Civ. P. 26(b)(2)(c)(i).

31.     Dreier's testimony cannot be obtained by another more convenient source because he was the sole equity partner of Dreier LLP and the primary attorney at Dreier LLP responsible for the Gardi Parties' legal matters from the day they retained Dreier LLP's services through and including the day of Dreier's arrest on December 7, 2008.

32.     The Gardi Parties did not learn of the theft of the Stolen Settlement Funds until Dreier's arrest was made public. Accordingly, they have not had any, much less ample, opportunity to obtain the information by other forms of discovery in this action. Fed. R. Civ. P. 26(b)(2)(c)(ii).

**C.      The Burden or Expense of the Proposed Deposition Does Not Outweigh Its Benefit.**

33.     Finally, the burden or expense of the proposed deposition does not outweigh its likely benefit. Fed. R. Civ. P. 26(b)(2)(c)(iii). As outlined above, Dreier was the primary attorney at Dreier LLP representing the Gardi Parties and therefore dealing with JANA regarding the Dispute. Dreier is very likely the only attorney with personal knowledge of the role Dreier LLP and JANA played in the negotiation and fraudulent settlement of the Gardi Parties' dispute with JANA, as well as the subsequent transfer of the Stolen Settlement Funds in and out of the 5966 Account. These issues are at the heart of the Gardi Parties' Proofs of Claims.

34.     The Gardi Parties do not anticipate there to be excessive or unusually burdensome costs associated with the deposition of Dreier. Considering the needs of the Gardi Parties in obtaining this information, the significant amount in controversy, and the fact that this is the only method of obtaining this discovery, the benefits of Dreier's deposition far outweigh its burden or expense.

## CONCLUSION

For the foregoing reasons, the Gardi Parties respectfully request that the Court grant the

Proposed Order Granting Leave to Take the Deposition of Federal Prisoner Marc S. Dreier,

attached hereto as Exhibit G.

Dated: August 30, 2010
        New York, New York

                                        Respectfully submitted,

                                        ALSTON & BIRD LLP


                                        /s/ Craig Carpenito
                                        Craig Carpenito
                                        Alexander S. Lorenzo
                                        90 Park Avenue
                                        New York, New York 10016
                                        Tel: (212) 210-9400
                                        -and-
                                        John E. Stephenson, Jr.
                                        (admitted *pro hac vice*)
                                        One Atlantic Center
                                        1201 West Peachtree Street
                                        Atlanta, Georgia 30309
                                        Tel: (404) 881-7000

                                        *Attorneys for Paul Gardi and*
                                        *Alex Interactive Media, LLC*