UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:

DREIER LLP,

                       Debtor.

-------------------------------------------------------------x

:
:
:
:
:
:
:
:

Chapter 11

Case No.  08-15051 (SMB)

 

## SECOND AMENDED PLAN OF LIQUIDATION OF DREIER LLP JOINTLY PROPOSED BY THE CHAPTER 11 TRUSTEE AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

| | |
|---|---|
| DIAMOND McCARTHY LLP | KLESTADT & WINTERS, LLP |
| 620 Eighth Avenue, 39th Floor | 570 Seventh Avenue, 17th Floor |
| New York, New York 10018 | New York, New York 10018 |
| Tel:  (212) 430-5400 | Tel: (212) 972-3000 |
| Fax:  (212) 430-5499 | Fax: (212) 972-2245 |
| Howard D.  Ressler, Esq. | Tracy L. Klestadt, Esq. |
| Stephen T.  Loden, Esq. | Sean C. Southard, Esq. |
| | Joseph C. Corneau, Esq. |
| *Attorneys for Sheila M.  Gowan,* | *Attorneys for Official Committee* |
| *Chapter 11 Trustee for Dreier LLP* | *of Unsecured Creditors of Dreier LLP* |

Dated: February 11, 2014

# TABLE OF CONTENTS

INTRODUCTION .................................................................................... 1

ARTICLE 1 – DEFINITIONS AND RULES OF INTERPRETATION .......................... 1

    A. Definitions ................................................................................ 1

    B. Rules of Interpretation ............................................................ 10

ARTICLE 2 – PAYMENT OF CLAIMS NO REQUIRED TO BE CLASSIFIED ........ 10

    2.1. Claims Not Classified  ........................................................... 10

    2.2. Administrative Expense Claims .............................................. 10

    2.3. Professional Fee Claims and Trustee Commission ....................... 10

    2.4. Priority Tax Claims ............................................................... 11

ARTICLE 3 – CLASSIFICATION OF CLAIMS AND INTERESTS  ........................ 11

    3.1. Criterion of Class  ................................................................. 11

    3.2. Class Categories ................................................................... 11

ARTICLE 4 – TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ............ 11

    4.1. Class 1 (Wells Fargo Superpriority Claim)  ................................ 11

    4.2. Class 2 (Secured Claims) ........................................................ 12

    4.3. Class 3 (Priority Non-Tax Claims) ............................................ 12

    4.4. Class 4 (General Unsecured Claims) .......................................... 13

    4.5. Class 5 (Interests) ................................................................. 13

ARTICLE 5 – MEANS OF IMPLEMENTATION OF THE PLAN ........................... 13

    5.1. Appointment of Plan Administrator .......................................... 13

    5.2. Appointment of Plan Oversight Comittee .................................. 14

    5.3. Plan Oversight Committee Direction of Plan Administration  ........ 15

5.4. Removal of Plan Administrator ..................................................................... 16

5.5. Succession Matters ...................................................................................... 16

5.6. Liability, Release and Indemnification ......................................................... 16

5.7. Establishment of Reserves and Funds .......................................................... 17

5.8. Plan Distributions ........................................................................................ 18

5.9. Preservation of Causes of Action ................................................................ 18

5.10: Preservation and Abandonment of Records ................................................ 19

5.11. General Disposition of Assets...................................................................... 19

5.12. Disposition of Disputed Funds .................................................................... 19

5.13. Administrative Expense Claims Bar Date ................................................... 19

5.14. Deadline for Filing Applications Seeking Payment of Professional Fee
Claims or Trustee Commission ................................................................... 20

5.15. Execution of Documents to Effectuate Plan ............................................... 20

5.16. Objections to Claims ................................................................................... 20

5.17. Disallowance of Claims without Further Order of the Court ...................... 20

5.18. Continued Existence of Debtor Until Closing of the Case ......................... 20

5.19. Post-Confirmation Reports and Fees .......................................................... 21

5.20. Cancellation of Interests .............................................................................. 21

5.21. Creditors' Committee ................................................................................... 21

5.22. Insurance Preservation ................................................................................ 21

5.23. Termination of 401(k) Plan.......................................................................... 21

ARTICLE 6 – TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED
LEASES ...................................................................................... 22

6.1. General Provisions ....................................................................................... 22

6.2. Notice of Demand Rejection/Rejection Bar Date ......................................... 22

ARTICLE 7 – CONDITIONS PRECEDENT; CONFIRMATION & EFFECTIVE
        DATE ................................................................................................... 22

7.1. Conditions Precedent to Confirmation of the Plan ...................................... 22

7.2. Conditions Precedent to the Effective Date ................................................. 23

7.3. Waiver of Conditions Precedent .................................................................. 23

ARTICLE 8 – INJUNCTIONS; RELEASE; EXCULPATION ...................................... 23

8.1. General Injunctions ..................................................................................... 23

8.2. All Distributions Received in Full and Final Satisfaction ........................... 24

8.3. No Modification of Res Judicata Effect ....................................................... 24

8.4. Exculpation .................................................................................................. 24

ARTICLE 9 – PROVISIONS GOVERNING DISTRIBUTIONS ................................... 24

9.1. Payment in U.S. Dollars .............................................................................. 24

9.2. Distributions Only on Business Days .......................................................... 24

9.3. Unclaimed Distributions ............................................................................. 25

9.4. Timing of Distributions on Disputed Claims Subsequently Allowed .......... 25

9.5. Payment of Distribution of Disputed Claim ................................................ 25

9.6. Disputed Distribution .................................................................................. 25

9.7. Transmittal of Payments and Notices ......................................................... 25

9.8. Record Date for Distributions ..................................................................... 26

9.9. Claims Administration Responsibility ........................................................ 26

9.10. Disputed Claims ......................................................................................... 27

9.11. Limitations on Funding of Disputed Claims Reserve ................................. 28

9.12. Tax Requirements for Income Generated by Disputed Claims Reserve .... 28

9.13. No Payments of Fractional Cents or Distributions of Less Than One Hundred Dollars ............................................................................................... 28

9.14. Setoff and Recoupment .............................................................. 29

9.15. Payment of Taxes on Distributions Received Pursuant to the Plan ........... 29

9.16. Compliance with Tax Withholding and Reporting Requirements ............. 29

ARTICLE 10 – PLAN INTERPRETATION, CONFIRMATION AND VOTING ........ 30

10.1. Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired ............................................................................................... 30

10.2. Withdrawal and Modification of Plan .......................................... 30

10.3. Governing Law .......................................................................... 30

10.4. Voting of Claims ....................................................................... 30

10.5. Acceptance by Impaired Class.................................................... 30

10.6. Presumed Acceptances of Plan .................................................. 30

10.7. Presumed Rejections of Plan ..................................................... 30

10.8. Cram Down ............................................................................... 31

ARTICLE 11 – RETENTION OF JURISDICTION BY BANKRUPTCY COURT ...... 31

ARTICLE 12 – MISCELLANEOUS PROVISIONS .................................... 32

12.1. Headings .................................................................................. 32

12.2. No Attorneys' Fees ................................................................... 32

12.3. Reservation of Rights................................................................. 32

12.4. Notices ..................................................................................... 32

12.5. No Discharge ............................................................................ 33

12.6. Claims in Dollars ...................................................................... 33

12.7. Binding Effect ............................................................................................. 33

## INTRODUCTION

Sheila M. Gowan, as chapter 11 trustee (the "Trustee" or "Chapter 11 Trustee"), and the Official Committee of Unsecured Creditors (the "Creditors' Committee") for Dreier LLP jointly propose this second amended chapter 11 plan (the "Plan") pursuant to section 1121 of the Bankruptcy Code.

### ARTICLE 1 - DEFINITIONS AND RULES OF INTERPRETATION

**A.    Definitions**

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, shall have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

**1.1**    "Administrative Expense Claim" means a Claim for costs and expenses of administration allowed under sections 503(b) and 507(a)(1) including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estate and winding down the Debtor's business during the Bankruptcy Case, (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the conduct of its business during the Bankruptcy Case, (c) any Professional Fee Claims, whether fixed before or after the Effective Date, (d) any Trustee Commission, (e) any costs and expenses for the management, maintenance, preservation, sale, or other disposition of any Assets, and (f) any fees or charges assessed against the Debtor's Estate under section 1930, chapter 123, title 28, United States Code.

**1.2**    "Administrative Expense Claims Bar Date" shall have the meaning set forth in Section 5.13 of the Plan.

**1.3**    "Administrative Reserve" means a reserve in the initial amount of not less than $4,500,000 established by the Plan Administrator as provided in Section 5.7 hereof, to fund post-confirmation costs and expenses of the Plan Administrator.

**1.4**    "Allowed Administrative Expense Claim" means an Administrative Expense Claim, to the extent it is or has become an Allowed Claim.

**1.5**    "Allowed Claim/Allowed Interest" means a Claim or Interest against the Debtor (i) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules, or (ii) if no proof of Claim or Interest has been timely filed, which has been or hereafter is listed by the Debtor in its Schedules as liquidated in an amount and not disputed or contingent, as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or the Claims Objection Bar Date, or as to which an objection has been interposed and such Claim or Interest has been allowed in whole or in part by a Final Order, or (iii) a claim or interest that is allowed by final order of the Bankruptcy Court.  For purposes hereof, an "Allowed Claim" shall include any

1

Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, any Claim allowed under or pursuant to the terms of this Plan, or any Claim that has been allowed by a Final Order, provided, however, that (i) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) "Allowed Claim" shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date; and (iii) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

**1.6** "Assets" means any and all property of the Estate, including without limitation all property and other interests identified in section 541(a) of the Bankruptcy Code. Without limiting the foregoing, Assets shall include all of the Debtor's real, personal, tangible and intangible property, wherever located and whether acquired prior to or after the Petition Date, including Cash, Receivables, furniture, fixtures, equipment, artwork, intellectual property, Causes of Action (including Avoidance Actions), together with the proceeds and products, replacements and accessions thereof.

**1.7** "Available Cash" means all Cash held by the Plan Administrator as of any Distribution Date other than Restricted Cash.

**1.8** "Avoidance Action" means any Causes of Action to avoid or recover a transfer of property of the Estate or an interest of the Debtor in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state or common law.

**1.9** "Ballot" means the form distributed to the holder of an impaired Claim on which is to be indicated whether such holder accepts or rejects the Plan.

**1.10** "Ballot Date" means the date established by the Bankruptcy Court and set forth in the Disclosure Statement Order for the submission of Ballots and the election of treatments pursuant to the terms and provisions of the Plan.

**1.11** "Bankruptcy Case" means the case concerning the Debtor, commenced on December 16, 2008, under chapter 11 of the Bankruptcy Code, administered under case number 08-15051 (SMB) in the United States Bankruptcy Court for the Southern District of New York.

**1.12** "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Bankruptcy Case.

**1.13** "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Southern District of New York wherein the Bankruptcy Case is pending.

**1.14**    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, and any Local Rules of the Bankruptcy Court, as amended, in effect and applicable to the Debtor's Bankruptcy Case.

**1.15**    "Bar Date" means March 31, 2009 (June 14, 2009 for governmental entities), unless the Court has set a different date by which a specific Creditor must file a proof of claim, in which case it means, for such specific Creditor, such different date set by the Court.

**1.16**    "Business Day" means any day other than a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**1.17**    "Cash" means legal tender of the United States of America.

**1.18**    "Causes of Action" means any and all Claims, rights, actions, chose in action, suits, causes of action, liens, judgments and damages belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to or after the Petition Date, and in each case whether known or unknown, in law, equity or otherwise, including without limitation, Avoidance Actions, Receivables and claims for Unfinished Business, including, but not limited to, the Causes of Action set forth in Exhibit B, Exhibit C and Exhibit D to the Disclosure Statement.

**1.19**    "Causes of Action Proceeds" means any and all recoveries, including without limitation money or property which is received by the Estate, the Plan Administrator, or any other representative of the Estate, from any Causes of Action.

**1.20**    "Claim" means, as defined in Bankruptcy Code section 101(5): (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.21**    "Claim Transfer Document" shall have the meaning set forth in Section 9.8 of this Plan.

**1.22**    "Claims Objection Bar Date" means, unless otherwise extended by Order of the Court, the first Business Day that is at least 270 days after the Effective Date.

**1.23**    "Class" means a category of Claims or Interests described in Article 3 of the Plan.

**1.24**    "Committee Receivables" means, collectively and individually, as applicable, all unpaid hourly invoices for legal services rendered, or expenses incurred by DLLP on behalf of its clients, which the Creditors' Committee has been assigned to

collect pursuant to the Second Cash Collateral Order and as further set forth on the schedule thereto.

**1.25** "<u>Confirmation Date</u>" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.26** "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the Plan may be amended by its terms and consistent with applicable law, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

**1.27** "<u>Creditor</u>" means any Person holding a Claim against the Debtor or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtor, that arose or is deemed to have arisen on or prior to the Petition Date, including, without limitation, a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

**1.28** "<u>Creditors' Committee</u>" or "<u>Committee</u>" means the official committee of unsecured creditors appointed by the U.S. Trustee to represent the interests of unsecured creditors in the Bankruptcy Case.

**1.29** "<u>Criminal Case</u>" means case number S1 09 Cr. 85 (JSR) encaptioned *United States of America v. Marc Dreier*, commenced in the United States District Court for the Southern District of New York.

**1.30** "<u>Debtor</u>" or "<u>DLLP</u>" means Dreier LLP, the debtor in the Bankruptcy Case.

**1.31** "<u>Deficiency Claim</u>" means that portion of any Allowed Claim held by a Secured Creditor which exceeds the value of the assets securing such Allowed Claim.

**1.32** "<u>Disallowed</u>" means, when referring to a Claim or Interest, a Claim (including a Scheduled Claim) or Interest, or any portion of a Claim or Interest, which has been disallowed or expunged by a Final Order.

**1.33** "<u>Disclosure Statement</u>" means the disclosure statement for the Plan, and all exhibits, annexed thereto or otherwise filed in connection therewith, approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

**1.34** "<u>Disclosure Statement Order</u>" means the Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

**1.35** "<u>Disputed</u>" means, with respect to a Claim against or Interest in, the Debtor, the extent the allowance of such Claim or Interest is the subject of a timely objection, complaint or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise

disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn with prejudice, or determined by a Final Order.

**1.36** "Disputed Claims Reserve" means the segregated account established by the Plan Administrator consistent with Article 9.10 of the Plan.

**1.37** "Disputed Funds" means those certain funds held in the accounts identified on Exhibit E to the Disclosure Statement, which the Trustee and Committee assert may be property of the Estate.

**1.38** "Distribution" means any distribution made pursuant to the terms of this Plan.

**1.39** "Distribution Date" means any date on which a Distribution is made to holders of Allowed Claims under this Plan.  The first Distribution shall occur as soon as practicable, on or after the Effective Date.  To the extent subsequent Distributions are necessary, such subsequent Distributions shall occur as soon after the first Distribution Date as the Plan Administrator shall reasonably determine is appropriate in light of (i) the amount of funds on hand; (ii) the amount and nature of disputed claims; (iii) the activities to be accomplished, including their anticipated duration and costs; (iv) the length of time since any prior Distribution; (v) the costs of effecting and interim Distribution.

**1.40** "Effective Date" means the earlier of (a) the first Business Day after the entry of the Confirmation Order that (i) the conditions to effectiveness of the Plan set forth in Section 7.2 of the Plan have been satisfied or otherwise waived, and (ii) the effectiveness of the Confirmation Order has not been stayed, and (b) such other date following the Confirmation Date that the Trustee and the Creditors' Committee, in their reasonable discretion, designate.

**1.41** "Employee" means an employee, associate or of counsel of the Debtor, but not a Partner.

**1.42** "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Petition Date.

**1.43** "Fee and Commission Application Deadline" shall have the meaning set forth in Section 5.14 of the Plan.

**1.44** "First Cash Collateral Order" means the Stipulation and Order Pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001 (1) Authorizing Trustee's Use of Cash Collateral, (2) Providing Adequate Protection, and (3) Granting Related Relief, dated February 19, 2009.

**1.45** "File Disposition Procedures" means those certain procedures approved by order of the Bankruptcy Court on January 31, 2011, concerning the disposition of certain client files.

5

**1.46**    "Final Order" means an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

**1.47**    "General Unsecured Claim" means any Unsecured Claim against the Debtor that is not an Administrative Expense Claim, Priority Tax Claim, or Priority Non-Tax Claim.

**1.48**    "Insurance Policies" means any policy of insurance and any agreements relating thereto that may be available to provide coverage for Claims against the Debtor, its Employees, Partners or any other Person.

**1.49**    "Interest" means the ownership and related rights and interests of any Partner, including Marc S. Dreier, pursuant to any applicable law, in and to the Debtor.

**1.50**    "MSD" means the individual Marc Stuart Dreier.

**1.51**    "Necessary Information" shall have the meaning set forth in Section 5.10 of this Plan.

**1.52**    "Partner" means any individual who was identified by DLLP on its letterhead, websites, business cards or other promotional material as a partner of DLLP at any point in time, or who otherwise held himself or herself out to clients of the DLLP or the legal community as a partner of DLLP.

**1.53**    "Person" means any individual, corporation, partnership, association, joint venture, Limited Liability Company, limited liability partnership, estate, trust, receiver, trustee, unincorporated organization or governmental unit or subdivision thereof or other entity.

**1.54**    "Petition Date" means December 16, 2008, the date upon which the Receiver filed a voluntary petition on behalf of the Debtor for relief under chapter 11 of the Bankruptcy Code.

**1.55**    "Plan" means this Plan and any exhibits annexed hereto or otherwise filed in connection with the Plan, and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized and permitted amendment or modification.

**1.56** "Plan Administrator Agreement" means the agreement between the Trustee, the Creditors' Committee and the Plan Administrator.

**1.57** "Plan Administrator" means Sheila M. Gowan, or such other person or entity appointed by the Plan Oversight Committee in accordance with the Plan.

**1.58** "Plan Oversight Committee" shall have the meaning set forth in Section 5.1 of the Plan.

**1.59** "Post-Confirmation Expenses" means the administrative expenses accrued following the Effective Date, including without limitation, all fees and expenses of the Plan Administrator and Plan Oversight Committee, and any Professionals retained by the Plan Administrator and Plan Oversight Committee. If a member of the Plan Oversight Committee participates by counsel, Post-Confirmation Expenses shall include the reasonable hourly rate of such counsel. If a member of the Plan Oversight Committee does not participate by counsel, Post-Confirmation Expenses shall include reimbursement for his or her time at a rate to be agreed upon by the Plan Administrator and such member of the Plan Oversight Committee.

**1.60** "Priority Non-Tax Claim" means a Claim, other than an Administrative Expense Claim or a Priority Tax Claim, which is entitled to priority in payment under sections 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.61** "Priority Tax Claim" means a Claim or a portion of a Claim of a governmental unit against the Debtor which is entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.62** "Professional Fee Claims" means any Claim of a professional retained in the Bankruptcy Case pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise, for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the extent any such Claim is allowed by the Bankruptcy Court pursuant to sections 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**1.63** "Professionals" means those professional persons, including lawyers, financial advisors, and accountants retained by the Trustee, the Creditors' Committee, the Plan Administrator or the Plan Oversight Committee during the Bankruptcy Case. For the avoidance of doubt, the Plan Administrator and Plan Oversight Committee are not required to obtain Bankruptcy Court approval for the retention of their Professionals.

**1.64** "Pro Rata" means, in connection with a particular Allowed Claim or Allowed Interest and in connection with any Distribution, the ratio between the amount of such Allowed Claim or Allowed Interest and the aggregate amount of all Allowed Claims or Allowed Interests in such Class or Classes entitled to such Distribution.

**1.65** "Receivables" means, collectively and individually, as applicable, all unpaid invoices for legal services rendered or expenses incurred by DLLP, on behalf of its clients, other than the Committee Receivables.

**1.66**    "Receiver" means Mark Pomerantz in his capacity as court-appointed receiver for MSD and his assets, which include his interests is DLLP.

**1.67**    "Record Date" shall have the meaning set forth in Section 9.8 of this Plan.

**1.68**    "Restricted Cash" means the Cash set aside or segregated, from time to time, by the Plan Administrator in (a) the Administrative Reserve, in accordance with the Plan Administrator Agreement, for the payment of the Post-Confirmation Expenses, including the fees and out-of-pocket expenses of the Professionals retained by the Plan Administrator and the Plan Oversight Committee, and such other expenses as may be necessary to implement the Plan, and/or (b) the Disputed Claims Reserve.

**1.69**    "Scheduled Claim" means a Claim that is listed in the Debtor's Schedules.

**1.70**    "Schedules" means the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statements of financial affairs, and other schedules and statements filed by the Trustee on behalf of the Debtor pursuant to Federal Rule of Bankruptcy Procedure 1007, and any amendments thereto.

**1.71**    "Second Cash Collateral Order" means the Second Stipulation and Order Pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001 (1) Authorizing Trustee's Use of Cash Collateral, (2) Providing Adequate Protection, and (3) Granting Related relief, dated May 21, 2009.

**1.72**    "Secured Claim" means a Claim secured by a lien, as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a judicial lien as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property.

**1.73**    "Secured Creditor" means the holder of a Secured Claim.

**1.74**    "Tax Information" shall have the meaning set forth in Section 9.15(a) of this Plan.

**1.75**    "Tax Info Request" shall have the meaning set forth in Section 9.15(b) of this Plan.

**1.76**    "Trustee" or "Chapter 11 Trustee" means Sheila M. Gowan, the trustee for DLLP, who was appointed by order of the Bankruptcy Court entered on January 9, 2009.

**1.77**    "Trustee Commission" means the Claim for compensation payable to the Chapter 11 Trustee relating to her services  provided as trustee in connection with the Bankruptcy Case, when and to the extent any such Claim is allowed by the Bankruptcy Court pursuant to sections 326, 330, 331, or 503(b) of the Bankruptcy Code.

**1.78** "U.S. Trustee" means any and all representatives and employees of the Office of the United States Trustee for the Southern District of New York.

**1.79** "Unclaimed Distribution" means any Distribution together with interest earned or payable thereon, if any, after the applicable Distribution Date, unclaimed after ninety (90) days following any Distribution Date. Unclaimed Distributions shall include, without limitation: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (ii) funds representing checks which have not been paid; and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a correct address.

**1.80** "Unfinished Business" means unfinished client matters that departing lawyers of DLLP transferred to successor firms in which the Debtor's estate may claim an interest on the basis of, among other theories, quantum meruit.

**1.81** "Unsecured Claim" means any Claim which is not secured by an offset or "lien," as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property.

**1.82** "Unsecured Creditor Fund" means the current Cash held by the Trustee plus all Cash derived from liquidation of Assets, Causes of Action Proceeds, less any Distributions or reserves on account of Secured Claims, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claim, and/or Post-Confirmation Expenses.

**1.83** "Voting Agent" means GCG, Inc., a Delaware corporation, which has been retained by the Trustee to perform certain solicitation and other administrative services.

**1.84** "Wells Fargo" means Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, N.A., with said merger having occurred during the Bankruptcy Case.

**1.85** "Wells Fargo Collateral Settlement" means that certain settlement agreement dated as of March 13, 2012 by and between Wells Fargo and the Trustee and approved by order of the Court entered on May 8, 2012.

**1.86** "Wells Fargo Superpriority Claim" means the super priority claim of Wells Fargo as defined in the First Cash Collateral Order and the Second Cash Collateral Order and as fixed in the amount of $940,527.33 as of October 9, 2012 by that certain Stipulation and Order Resolving Motion of Wells Fargo Bank, N.A. For the Immediate Payment of An Allowed Superpriority Claim entered on October 11, 2012.

**1.87** "401k Plan" means the DLLP employee 401k plan from which all assets have been fully distributed.

### B. Rules of Interpretation

For purposes of this Plan: (a) where appropriate in the relevant context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any references in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in the Plan, any reference in the Plan to an existing document or appendix filed or to be filed means such document or appendix, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) unless otherwise specified herein, any reference to a Person as a holder of a Claim or Interest includes that Person's successors, assigns and affiliates; (e) unless otherwise specified, all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan; (f) the words "herein", "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to the Plan.   To the extent that the Plan is inconsistent with the Disclosure Statement or provisions of the documents comprising the Plan Supplement, unless such document specifically states otherwise, the provisions of the Plan shall be controlling.

## ARTICLE 2 - PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED

### 2.1    Claims Not Classified.

No classes are designated for Administrative Expense Claims, including Professional Fee Claims, Trustee Commission, and Priority Tax Claims.

### 2.2    Administrative Expense Claims.

All Allowed Administrative Expense Claims, other than Professional Fee Claims or Trustee Commission, shall be paid by the Plan Administrator in full, in Cash, in such amounts as are incurred in the ordinary course of the liquidation of the Debtor, or in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's liquidation or (c) as may be agreed upon between the holder of any such Administrative Expense Claim and the Plan Administrator.  In the event there exists any Disputed Administrative Expense Claims on the Effective Date, the Plan Administrator shall at all times hold and maintain Cash in an amount equal to that portion of the Disputed Claims Reserve attributable to all Disputed Administrative Expense Claims.

### 2.3    Professional Fee Claims and Trustee Commission.

The Trustee or the Plan Administrator shall pay all Professional Fee Claims and any Trustee Commission as soon as practicable after a Final Order has awarded such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.14 hereof.  In the event any Disputed Professional Fee Claims or Disputed Trustee Commission exist on the Effective Date, the Plan Administrator shall hold and maintain Cash in an amount equal to that portion of the Disputed Claims Reserve attributable to all Disputed Professional Fee Claims and any Disputed Trustee

Commission until such dispute is resolved consensually or by order of the Bankruptcy Court.

### 2.4 **Priority Tax Claims**.

Unless otherwise agreed to by the parties, each holder of an Allowed Priority Tax Claim will receive an amount in Cash equal to the Allowed amount of such Priority Tax Claim as soon as practicable following the later of (a) the Effective Date, and (b) the date on which such Priority Tax Claim becomes an Allowed Claim. In the event any Disputed Priority Tax Claims exist on the Effective Date, the Plan Administrator shall hold and maintain Cash in an amount equal to that portion of the Disputed Claims Reserve attributable to all Disputed Priority Tax Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.

## ARTICLE 3 - CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.1 **Criterion of Class**.

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is in a different Class or Classes to the extent that the remainder of the Claim qualifies within the description of the different Class or Classes.

### 3.2 **Class Categories**.

The following classes of Claims and Interests are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which Classes shall be mutually exclusive:

| Class | Class Designation | Status/Voting Rights |
|-------|-------------------|----------------------|
| Class 1 | Wells Fargo Superpriority Claim | Unimpaired/Deemed to Accept |
| Class 2 | Secured Claims | Unimpaired/Deemed to Accept |
| Class 3 | Priority Non-Tax Claims | Unimpaired/Deemed to Accept |
| Class 4 | General Unsecured Claims | Impaired/Entitled to Vote |
| Class 5 | Interests | Impaired/Deemed to Reject |

## ARTICLE 4 - TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The following treatment of and consideration to be received by holders of Allowed Claims and Allowed Interests pursuant to this Plan shall be in full settlement, release and discharge of such Allowed Claims and Allowed Interests.

### 4.1 **Class 1 (Wells Fargo Superpriority Claim)**.

(a) On the Effective Date, or as soon thereafter as is reasonably practical, Wells Fargo shall receive (i) not more than the full amount of its Allowed Wells Fargo

11

Superpriority Claim from the net proceeds of the disposition of any collateral which is pledged as security for such Allowed Wells Fargo Superpriority Claim and which collateral remains in possession and control of the Estate or (ii) such other, less favorable treatment as may be agreed to in writing by the holder of such Allowed Wells Fargo Superpriority Claim and the Plan Administrator.  Any Deficiency Claim of Wells Fargo which may arise on account of the present lack of collateral or otherwise resulting from the aforesaid treatment shall be included in and treated as a Class 4 General Unsecured Claim.

(b) On October 9, 2012, the Court entered a Stipulation and Order fixing the outstanding amount of the Wells Fargo Superpriority Claim at $940,527.33. Subject to and in accordance with the terms of the Cash Collateral Orders, the proceeds of the disposition of assets of the Estate, other than Avoidance Actions or the proceeds thereof, shall be paid to Wells Fargo in satisfaction of the Wells Fargo Superpriority Claim.

**4.2**      **Class 2 (Secured Claims)**.

(a)      On the Effective Date, or as soon thereafter as is reasonably practical, each holder of an Allowed Secured Claim shall receive (i) the net proceeds of the sale or other disposition of any collateral which is pledged as security for such Allowed Secured Claim and which remains in possession and control of the Estate; or (ii) such other, less favorable treatment as may be agreed to in writing by the holder of such Allowed Secured Claim and the Plan Administrator.  Any Deficiency Claim which may arise on account of the present lack of collateral or otherwise resulting from the aforesaid treatment shall be included in and treated as a Class 4 General Unsecured Claim.

(b)      Notwithstanding the foregoing, the Secured Claim of Wells Fargo shall be treated in accordance with the Second Cash Collateral Order, as amended by the Wells Fargo Settlement. On and after the Effective Date, or as soon thereafter as reasonably practical, Wells Fargo shall receive forty percent (40%) of the Net AR Proceeds (as defined in the Wells Fargo Settlement) as they are obtained. Any deficiency shall be treated as a Class 4 General Unsecured Claim. For the avoidance of doubt, at the time of any Distribution to holders of Class 4 General Unsecured Claims, the Plan Administrator shall reserve an amount equal to the Distribution that would be made on the maximum potential deficiency claim resulting from the aforesaid treatment, pending the liquidation of all collateral in which Wells Fargo claims an interest.

(c) Nothing in the Plan shall be construed to alter or waive the rights of the Trustee, the Plan Administrator, the Creditors' Committee or the Plan oversight Committee to contest the validity of any Secured Claim, except for the Secured Claim of Wells Fargo, which has been fixed and allowed by stipulation.

**4.3**      **Class 3 (Priority Non-Tax Claims).**

On the Effective Date, or as soon thereafter as is reasonably practical, in full satisfaction of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive (a) an amount in Cash equal to the Allowed amount of such

Priority Non-Tax Claim, or (b) such other treatment as to which the Plan Administrator and the holder of such Allowed Priority Non-Tax Claim shall have agreed upon in writing.

### 4.4    Class 4 (General Unsecured Claims).

(a)    On the Effective Date, or as soon thereafter as is reasonably practical, in full satisfaction of such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive one or more Distributions equal to its *Pro Rata* share of the Unsecured Creditor Fund.

(b)    Certain holders of General Unsecured Claims were determined in the Criminal Case to be victims of MSD's crimes and received payments from the proceeds of assets seized by the Government (in each case a "Restitution Payment"). Those holders of General Unsecured Claims determined to be victims (each a "Victim" and collectively, the "Victims") are identified in the Amended Restitution Order of the District Court dated August 18, 2009. The Plan Administrator shall take reasonable steps to ensure that no Victim receives more than one-hundred percent (100%) of their Allowed General Unsecured Claim as a result of such holder's receipt of one or more Restitution Payments and any Distributions contemplated by the Plan.

### 4.5    Class 5 (Interests).

No holder of an Interest shall be entitled to a Distribution under the Plan.

### ARTICLE 5 - MEANS OF IMPLEMENTATION OF THE PLAN

### 5.1    Appointment of Plan Administrator.

(a)    Appointment. On the Effective Date, the Plan Administrator Agreement shall be executed by the Trustee, on behalf of the Debtor, the Creditors' Committee, and by the Plan Administrator. The Plan Administrator shall be deemed appointed upon full execution of the Plan Administrator Agreement. The initial Plan Administrator shall be Sheila M. Gowan.

(b)    General Powers, Rights and Responsibilities of Plan Administrator.  On the Effective Date, subject to the direction of the Plan Oversight Committee, the Plan Administrator shall become the exclusive representative of the Estate.  The powers, rights, and responsibilities of the Plan Administrator, all of which shall arise upon the occurrence of the Effective Date, shall be specified in the Plan Administrator Agreement. Subject to the direction of the Plan Oversight Committee, the powers, rights and responsibilities of the Plan Administrator, shall include, but are not be limited to:

(i) the dissolution and wind-down activities of the Debtor and its Estate;

13

(ii) the power and authority to negotiate, resolve and enter into settlements on all matters affecting the Estate, including, without limitation, Receivables, Disputed Claims, and/or other Causes of Action;

(iii) the authority to take such actions as she or he deems appropriate in the Plan Administrator's reasonable business judgment against any Person with respect to a Cause of Action;

(iv) the authority to employ all discovery devices permitted under applicable law, including Federal Rule of Bankruptcy Procedure 2004, in order to investigate any Causes of Action;

(v) the authority to take or cause to be taken all actions pursuant to the provisions of the Plan Administrator Agreement as necessary to secure the effective implementation of this Plan;

(vi) the authority to employ, without order of the Bankruptcy Court, Professionals to assist her or him in carrying out her or his duties hereunder, including former counsel to the Trustee and/or the Creditors' Committee, and may compensate and reimburse the expenses of those Professionals without further order of the Bankruptcy Court; and

(vii) the authority to complete the disposition of client files and records of the Debtor and its Estate in accordance with the File Disposition Procedures and this Plan.

**5.2    Appointment of Plan Oversight Committee**.

(a)    Appointment. On the Effective Date, an oversight committee (the "Plan Oversight Committee") shall be appointed and shall consist of three members willing to serve on the Plan Oversight Committee. The Creditors' Committee shall, by a simple majority of those voting, select the members of the Plan Oversight Committee. The Plan Oversight Committee may be composed of holders of Unsecured Claims or such other parties in interest as the Committee designates prior to the Effective Date, or the Plan Oversight Committee designates after the Effective Date.

(b)    Authority and Responsibilities. The Plan Oversight Committee shall have the authority specified in the Plan. The Plan Administrator shall consult with and provide information to the Plan Oversight Committee.

(c)    Meetings of the Plan Oversight Committee. Meetings of the Plan Oversight Committee are to be held not less often than quarterly. Special meetings of the Plan Oversight Committee may be held whenever and wherever called for by any member of the Plan Oversight Committee. Any action required or permitted to be taken by the Plan Oversight Committee at a meeting may be taken without a meeting if the action is taken by one or more written consents describing the action taken, approved by a majority of the members of the Plan Oversight Committee and recorded in the minutes, if any, or other transcript, if any, of the proceedings of the Plan Oversight Committee.

14

The Plan Administrator and the Plan Administrator's designated advisors may attend meetings of the Plan Oversight Committee if invited by the Plan Oversight Committee in its sole discretion.

(d)     Manner of Acting.  Two members of the Plan Oversight Committee shall constitute a quorum for the transaction of business at any meeting of the Plan Oversight Committee. Any or all of the members of the Plan Oversight Committee may participate in a regular or special meeting by, or conduct the meeting through the use of conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Plan Oversight Committee participating in a meeting by these means is deemed to be present in person at the meeting. Voting (including on negative notice) may be conducted by electronic mail or individual communications.  For the avoidance of doubt, the Plan Administrator is not a member of the Plan Oversight Committee and has no vote thereon.

(e)     Manner of Appearance of Plan Oversight Committee and Compensation. The Plan Oversight Committee may retain Professionals and such other advisors as the Plan Oversight Committee deems necessary. Reasonable fees and expenses of Professionals retained by the Plan Oversight Committee, if any, shall be paid by the Plan Administrator from the Administrative Reserve. If a member of the Plan Oversight Committee participates by counsel, such member of the Plan Oversight Committee shall be entitled to reimbursement for the normal hourly rate of such counsel from the Administrative Reserve. If a member of the Plan Oversight Committee does not appear by counsel, such member shall be entitled to compensation from the Administrative Reserve for his or her time at a reasonable rate, plus reasonable expenses.

(f)     Resignation and Removal of Plan Oversight Committee Members. If a member of the Plan Oversight Committee resigns, or, if in the opinion of a majority of the members of the Plan Oversight Committee, a member has abdicated his or her responsibilities, the remaining members of the Plan Oversight Committee may solicit replacement members, with any such replacement member to be agreed to by a simple majority of the remaining members of the Plan Oversight Committee. Removal and replacement of members of the Plan Oversight Committee shall be approved by order of the Bankruptcy Court. The Plan Oversight Committee shall seek Bankruptcy Court approval of removal and replacement of members of the Plan Oversight Committee on Notice of Presentment to (i) the Office of the United States Trustee, (ii) the Plan Administrator, (iii) the members of the Plan Oversight Committee, and (iv) any parties in interest requesting post-Effective Date notice.

### 5.3    Plan Oversight Committee Direction of Plan Administrator.

The Plan Administrator shall consult with Plan Oversight Committee with respect to the administration of the Bankruptcy Case as set forth in this Plan and such matters related thereto that the Plan Oversight Committee determines in its discretion. The Plan

Oversight Committee may designate certain actions which require its prior consent before the Plan Administrator takes such actions, which designation may be modified by the Plan Oversight Committee at any time.

### 5.4 **Removal of Plan Administrator**.

The Plan Oversight Committee may remove the Plan Administrator upon vote of two (2) of three (3) members of the Plan Oversight Committee, for cause as reasonably determined by the Plan Oversight Committee. Cause may include, without limitation, the Plan Administrator's failure or refusal to keep the Plan Oversight Committee reasonably informed about the Plan Administrator's activities and the status of open matters, or follow the direction of the Plan Oversight Committee. The Bankruptcy Court shall retain jurisdiction to interpret and enforce the foregoing provisions. The Plan Administrator will continue to serve after her removal until the earlier of (i) the time when appointment of a successor Plan Administrator becomes effective; or (ii) such date as the Bankruptcy Court otherwise orders.

### 5.5 **Succession Matters**.

If the Plan Administrator is removed as set forth herein, or upon the death or incompetency of the Plan Administrator (in the case the Plan Administrator is a natural person) or upon dissolution (in the case the Plan Administrator is not a natural person), the Plan Oversight Committee shall designate a successor Plan Administrator. Such successor Plan Administrator shall be deemed to succeed the Plan Administrator in all respects, including, but not limited to all litigation and other matters related to prosecution of the Causes of Action, without need for further order of the Bankruptcy Court. In the event of resignation or removal of the Plan Administrator, the departing Plan Administrator shall promptly (a) execute and deliver such documents, instruments and other writings as reasonably requested by the successor Plan Administrator or as ordered by the Bankruptcy Court; (b) turn over to the successor Plan Administrator all property of the Estate in his or her possession, custody and control, including, but not limited to all funds held in bank accounts, and all files, books and records and other documents and information related to the Assets and to DLLP; and (c) otherwise assist and cooperate in affecting the assumption of his or her obligations and functions by the successor Plan Administrator. The successor Plan Administrator may, in its discretion, retain such Professionals as it deems necessary, including the Professionals of the departing Plan Administrator. If the Plan Administrator is replaced, the Professionals retained by the Plan Administrator shall be entitled to payment of their reasonable, undisputed fees and expenses from the Administrative Reserve through the date of the Plan Administrator's replacement as approved by the Plan Oversight Committee or otherwise allowed by order of the Bankruptcy Court.

### 5.6 **Liability, Release and Indemnification**.

The Plan Administrator and the Plan Oversight Committee, and each of their respective designees, employees or Professionals or any duly designated agent or representative of the Plan Administrator, or their respective employees, and the Plan

Oversight Committee, shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court. The Plan Administrator and the Plan Oversight Committee may, in connection with the performance of their respective functions, and in their respective sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys, or any Final Order of the Bankruptcy Court. Notwithstanding such authority, the Plan Administrator and the Plan Oversight Committee shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court. The Estate shall indemnify and hold harmless the Plan Administrator and her or his designees and Professionals, and all duly designated agents and representatives thereof (in their capacity as such), and the Plan Oversight Committee and its members (in their capacity as such) and Professionals, from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of this Plan; provided however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

### 5.7   Establishment of Reserves and Funds.

(a) Administrative Reserve. On the Effective Date or as soon thereafter as is practicable, the Administrative Reserve shall be established by the Plan Administrator in consultation with the Plan Oversight Committee. If the Plan Administrator determines that additional funding of the Administrative Reserve is required, from time to time, following the Effective Date, such funding shall be made from Available Cash, if any, with the prior consent of the Plan Oversight Committee, and then, to the Unsecured Creditor Fund. The Administrative Reserve shall be used to pay the Post-Confirmation Expenses, including, without limitation, costs and expenses of Professionals or other advisors retained by the Plan Administrator and/or the Plan Oversight Committee.

(b) Unsecured Creditor Fund. As soon as practicable following the Effective Date, the Unsecured Creditor Fund shall be established by the Plan Administrator which account shall be subject to the terms of this Plan and the Plan Administrator Agreement.

(c) Disputed Claim Reserve. As soon as practicable following the Effective Date, the Disputed Claim Reserve shall be established by the Plan Administrator; provided, however, that the Plan Administrator shall have no obligation to fund the Disputed Claim Reserve until, at the latest, immediately prior to the making of a Distribution to holders of Allowed Claims. The Plan Administrator shall fund the Disputed Claim Reserve from Available Cash in an amount equal to the amount holders

of Disputed Claims would have otherwise been entitled but for the dispute. The assets in the Disputed Claim Reserve shall be held separately from other assets held by the Plan Administrator, subject to an allocable share of all expenses and obligations of the estate, on account of Disputed Claims. The Plan Administrator shall remove funds from the Disputed Claims Reserve as the Disputed Claims are resolved, which funds shall be distributed as provided in section 5.8 of the Plan. Notwithstanding any other provision of the Plan to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Plan Administrator may treat any assets allocable to, or retained on account of, the Disputed Claims Reserve as held by one or more discrete entities for federal, and applicable state, local or other, income tax purposes, and may determine that such entity or entities shall constitute "disputed ownership funds" under, and may make the election permitted by, Treasury Regulation 1.468B-9, or any successor provision thereto. All recipients of Distributions under the Plan shall be bound by, and shall report consistent with, such income tax treatment.

### 5.8    Plan Distributions.

Following the Effective Date, as set forth in greater detail in Article 10 herein, Distributions shall be made by the Plan Administrator, subject to the review and consent of the Plan Oversight Committee, as follows:

(a) Initial Distributions of Cash:  On the first Distribution Date following the Effective Date, the Plan Administrator shall, pursuant to the terms of the Plan, make Distributions from Available Cash to holders of the Wells Fargo Super Priority Claim (to the extent of available proceeds of collateral as set forth in Section 4.1 of the Plan), Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Professional Fee Claims, Allowed Trustee Commission, and Allowed Priority Non-Tax Claims, and shall make Distributions to holders of Allowed Secured Claims (to the extent of available proceeds of collateral as set forth in Section 4.2 of the Plan) and to General Unsecured Claims in accordance Article IV of the Plan;

(b) Subsequent Distributions of Cash:  On each Distribution Date, the Plan Administrator shall, pursuant to the terms of the Plan, make Distributions to holders of Allowed General Unsecured Claims in an amount equal to such Creditor's *Pro Rata* share, if any, of Cash held in the Unsecured Creditor Fund on such Distribution Date. In no event shall the Plan Administrator be required to make Distributions more often than four times per year.

### 5.9    Preservation of Causes of Action.

Except as otherwise provided in this Plan or in any contract, instrument, release or agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Claims or Causes of Action that the Debtor, Trustee, the Committee, or Estate may have against any person or entity are preserved, including without limitation any and all Causes of Action the Debtor, Trustee, Committee, Estate or other appropriate party in interest may assert under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code.

**5.10**    **Preservation and Abandonment of Records**.

The Trustee shall preserve for the benefit of the Estate, all documents and files, including electronic data hosted on remote servers, that are necessary to the prosecution of the Causes of Action and claims resolution process (the "Necessary Information"). After the Effective Date, the Plan Administrator shall preserve the Necessary Information until the date that is one (1) year following the closing of the Bankruptcy Case. As of the Effective Date, the Plan Administrator shall be permitted to abandon (with or without destruction), any information that is not Necessary Information.

**5.11**    **General Disposition of Assets**.

Pursuant to section 1123(a)(5) of the Bankruptcy Code and subject to the terms of the Plan Administrator Agreement and the Plan, as soon as is reasonably practicable following the Effective Date, the Plan Administrator shall sell or otherwise dispose of, and liquidate to or otherwise convert to Cash, any non-Cash Assets in such manner as the Plan Administrator shall determine in his or her judgment is in the best interests of the Estate.

**5.12**    **Disposition of Disputed Funds**.

The Chapter 11 Trustee currently holds the Disputed Funds identified on Exhibit E to the Disclosure Statement. Certain Creditors and parties in interest have asserted, or may assert, rights and interests in the Disputed Funds.  The Trustee believes that certain of the Disputed Funds are property of the Estate since their derivation was from the comingled 5966 Account which MSD used to commit his fraudulent scheme.

Subject to the terms of the Plan, as soon as is reasonably practicable following the Effective Date, the Plan Administrator shall seek to negotiate a consensual resolution with the parties known to assert, or who may assert, interests in the Disputed Funds.  If consensual resolution is not attained within one hundred and twenty (120) days following the Effective Date, the Plan Administrator shall file a declaratory judgment action with the Court seeking determination as to whether the Estate, or any third party asserting rights or claims in the funds held in certain of the Disputed Funds, has a superior right, title and/or interest in the funds in question.

**5.13**    **Administrative Expense Claims Bar Date**.

With the exception of Professional Fee Claims and Trustee Commission, persons asserting and Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after the Effective Date (the "Administrative Expense Claims Bar Date"). No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an Allowed Claim. Any person asserting an Administrative Expense Claim that fails to file and serve an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment as against the Debtor and/or the Estate.

**5.14    Deadline for Filing Applications Seeking Payment of Professional Fee Claims or Trustee Commission.**

All parties seeking payment of Professional Fee Claims or Trustee Commission arising prior to the Effective Date must file with the Bankruptcy Court and serve upon the Plan Administrator and the Plan Oversight Committee, a final application and/or an application for payment of reasonable fees and expenses under section 503(b) of the Bankruptcy Code, as applicable, on or before the first Business Day after the thirtieth (30th) day after the Effective Date (the "Fee and Commission Application Deadline"). Any Professional failing to file and serve such final application or 503(b) motion on or before the Fee and Commission Application Deadline shall be forever barred from asserting any such right to payment against the Debtor or the Estate.

**5.15    Execution of Documents to Effectuate Plan.**

From and after the Confirmation Date, the Plan Administrator shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan. Entry of the Confirmation Order shall authorize the Plan Administrator to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action.

**5.16    Objections to Claims.**

The Trustee, Creditors' Committee, the Plan Administrator and the Plan Oversight Committee may file objections to claims through the date that is 270 days from the Effective Date of the Plan, as may be extended. All Claims shall be subject to section 502(d) of the Bankruptcy Code.

**5.17    Disallowance of Claims without Further Order of the Court.**

As of the Confirmation Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a proof of Claim has not been filed by the Creditor, shall be deemed disallowed and expunged. All Scheduled Claims that correspond to a proof of Claim filed by a particular Creditor shall be deemed to have been superseded by such later filed proof of Claim and the Scheduled Claims, regardless of priority, and shall be expunged from the claims register; provided however, that such proofs of Claim shall be subject to objection in accordance with Section 5.16 hereof.

**5.18    Continued Existence of Debtor Until Closing of the Case.**

Following the Effective Date, the Debtor, through the activities of the Plan Administrator, shall continue in existence for the purposes of, among other things, completing the liquidation of its Assets, winding up its affairs and filing appropriate tax returns. Upon the entry of an order closing this Bankruptcy Case, the Debtor shall be deemed dissolved for all purposes. No other actions or filings or payments shall be required in furtherance of such dissolution.

**5.19    Post-Confirmation Reports and Fees**.

Following the Effective Date and until the Case is closed, not less than once every one-hundred and eighty (180) days, the Plan Administrator shall be responsible for the filing of all post-Effective Date reports required during such periods with the U.S. Trustee and payment from the Debtor's Estate of all post-Effective Date fees charged or assessed against the Estate under 28 U.S.C. §1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

**5.20    Cancellation of Interests**.

On the Effective Date, all existing Interests, shall, without any further action, be cancelled, annulled, and extinguished and any certificates representing such canceled, annulled, and extinguished Interests shall be null and void.

**5.21    Creditors' Committee**.

On the Effective Date, the Creditors' Committee shall be deemed to be dissolved and the members of the Creditors' Committee shall be released and discharged from all duties and obligations arising from or related to the Bankruptcy Case, provided, however, that the Creditors' Committee shall remain in existence for the purposes of reviewing and approving fee applications of Professionals retained by the Trustee and Committee prior to the Effective Date. The reasonable fees and expenses of the Professionals retained by the Creditors' Committee for the foregoing shall be reimbursed by the Plan Administrator from the Administrative Reserve. Objections to Claims filed by the Creditors' Committee prior to the Effective Date that remain pending on the Effective Date shall vest in the Plan Administrator on the Effective Date, and the Plan Administrator will be deemed to succeed to the Creditors' Committee without need of further order of the Court. Actions and demands brought by the Creditors' Committee with respect to Committee Receivables that remain pending or outstanding on the Effective Date shall vest in the Plan Administrator on the Effective Date, and the Plan Administrator will be deemed to succeed the Creditors' Committee with respect thereto without need of further order of the Court.

**5.22    Insurance Preservation**.

Nothing in this Plan shall diminish or impair the enforceability of any Insurance Policies that may cover Claims against the Debtor, its Employees, its Partners or any other Person.

**5.23    Termination of 401(k) Plan.**

The Plan Administrator shall perform such acts as the Plan Administrator, with the advice of legal counsel, deems necessary or appropriate to terminate the Debtor's employee benefit plan known as the "Dreier LLP Savings Plan."

## ARTICLE 6 - TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES

### 6.1    General Provisions.

All executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Confirmation Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, or (ii) has expired or otherwise terminated pursuant to its terms.

### 6.2    Notice of Deemed Rejection/Rejection Bar Date.

Any party to an executory contract or unexpired lease that is rejected in accordance with Section 6.1 shall file a proof of Claim for damages from such rejection no later than thirty (30) days after the Effective Date.  The failure to timely file a proof of Claim shall be deemed a waiver of any Claim in connection with the rejection of such contract or lease.

## ARTICLE 7 - CONDITIONS PRECEDENT; CONFIRMATION & EFFECTIVE DATE

### 7.1    Conditions Precedent to Confirmation of the Plan.

The following conditions must be satisfied, or otherwise waived in accordance with Section 7.3, on or before the Confirmation Date:

(a) The Disclosure Statement Order shall have been entered and shall have become a Final Order;

(b) The entry of the Confirmation Order shall be in form and substance reasonably satisfactory to the Trustee and the Creditors' Committee and shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) provide that any transfers effected or mortgages or other security documents entered into or to be effected or entered into under the Plan shall be and are exempt from any state, city, or other municipality transfer taxes, mortgage recording taxes, and any other stamp or similar taxes pursuant to section 1146(a) of the Bankruptcy Code; (iii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; (iv) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud; (v) provide that all Interests shall be extinguished and canceled effective upon the Effective Date; (vi) approve the Plan Administrator Agreement; and (vii) establish the Administrative Expense Claims Bar Date.

**7.2**    **Conditions Precedent to the Effective Date**.

The Effective Date shall not occur and no obligations under the Plan shall come into existence, unless each of the following conditions is met or, alternatively, is waived in accordance with Section 7.3 hereof, on or before the Effective Date:

(a) The Confirmation Order shall have been entered and no stay of its effectiveness of the same shall have been issued within fourteen (14) days following the entry of the Confirmation Order;

(b) The Confirmation Order shall have authorized and approved the appointment of the Plan Administrator and the Plan Oversight Committee; and

(c) The Trustee shall have sufficient Cash on hand to pay all Administrative Expense Claims and fund the Administrative Reserve.

**7.3**    **Waiver of Conditions Precedent**.

Each of the conditions precedent in Sections 7.1 and 7.2 hereof may be waived or modified without further Court approval, in whole or in part, but only with the consent of each of the Trustee and the Creditors' Committee.

## ARTICLE 8 - INJUNCTION; RELEASE; EXCULPATION

**8.1**    **General Injunctions.**

**The following provisions shall apply and shall be fully set forth in the Confirmation Order.**

**(a)    Injunctions Against Interference with Consummation or Implementation of Plan.  All holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the Estate, the Plan Administrator, or the Plan Oversight Committee with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments and Distributions to be made hereunder.**

**(b) Plan Injunction.  Except as otherwise specifically provided for by this Plan, as and from the Effective Date, all Persons shall be enjoined from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any encumbrance of any kind; and/or (iii) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the Debtor, the Estate, the Plan Administrator, or the Plan Oversight Committee (and its members) to the fullest extent authorized or provided by the Bankruptcy Code.**

**(c) No Bar to Claims Against Third Parties. Holders of Claims or Interests against the Debtor are not barred or otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the Debtor.**

### 8.2    All Distributions Received in Full and Final Satisfaction.

Except as otherwise set forth herein, all payments and all Distributions to be made in accordance with the Plan on account of Claims (including Administrative Expense Claims) shall be received in full and final satisfaction, settlement and release of the Estate's obligations for such Claims as against the Debtor, its property and the Estate.

### 8.3    No Modification of Res Judicata Effect.

The provisions of this Article 8 are not intended, and shall not be construed, to modify the *res judicata* effect of any order entered in the Bankruptcy Case, including, without limitation, the Confirmation Order and any order finally determining Professional Fee Claims to any Professional or Trustee Commission due the Chapter 11 Trustee.

### 8.4    Exculpation.

**To the extent permitted by section 1125(e) of the Bankruptcy Code, the Trustee, the Creditors' Committee, and their respective members (acting in such capacity), employees and professionals (including professional firms and individuals within such firms), shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Bankruptcy Case, except for (i) acts or omissions as a result of willful misconduct or gross negligence and (ii) liability of any released person for any debt owed to the United States Government, any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the environmental laws of the United States or any state, city or municipality or (c) laws regarding the regulation of securities administered by the SEC and (d) any criminal laws of the United States, any state, city or municipality. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to the Plan.**

### ARTICLE 9 - PROVISIONS GOVERNING DISTRIBUTIONS

### 9.1    Payment in U.S. Dollars.

All Cash payments required under the Plan shall be made in U.S. dollars by checks drawn on a domestic bank selected by the Plan Administrator in accordance with the Plan or by wire transfer from a domestic bank, at the option of the Plan Administrator. The Plan Administrator may use the services of a third party to aid in the Distributions required to be made under this Plan, including the Voting Agent.

**9.2**    __Distributions Only on Business Days__.

Notwithstanding the foregoing provisions, if any Distribution called for under this Plan is due on a day other than a Business Day, then such Distribution shall instead be due the next Business Day.

**9.3**    __Unclaimed Distributions__.

Unclaimed Distributions (including Distributions made by checks that fail to be cashed or otherwise negotiated within ninety (90) days after the Distribution Date or which Distributions are returned to the Plan Administrator as undeliverable to the addresses specified in the Claims Register, as it shall exist on the date such Distributions are made, shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distribution(s) shall be deemed forfeited and expunged without any further action or order of the Bankruptcy Court and the holder of such Claim(s) shall be removed from the Distribution schedules, expunged from the Claims register and shall receive no further Distributions under this Plan.  Any such Unclaimed Distributions shall, as soon as is practicable, be redistributed pursuant to the provisions of the Plan.

**9.4**    __Timing of Distributions on Disputed Claims Subsequently Allowed__.

In the event that a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim on the next Distribution Date that is at least fifteen (15) business days after such Claim is Allowed.

**9.5**    __No Payment or Distribution on Disputed Claims__.

Any contrary provision hereof notwithstanding, no payments or other Distributions shall be made on account of any Disputed Claim, or any portion thereof, unless and until such Claim or some portion thereof is allowed by Final Order of the Bankruptcy Court.  For the avoidance of doubt, no portion of any Disputed Claim is entitled to a Distribution.  Holders of Disputed Claims shall be bound, obligated and governed in all respects by this Plan.

**9.6**    __Disputed Distribution__.

If a dispute arises as to the identity of a holder of an Allowed Claim who is to receive a Distribution, the Plan Administrator may, in lieu of making such Distribution to such holder, hold such amount until the dispute is resolved by Final Order of the Bankruptcy Court or by written agreement among the parties to such dispute.

**9.7**    __Transmittal of Payments and Notices__.

All Distributions shall be made to the holder of a Claim by regular first-class mail, postage prepaid, in an envelope addressed to such holder at the address listed on its proof of Claim filed with the Bankruptcy Court or, if no proof of Claim was filed, (i) at the address listed on the Debtor's Schedules, or (ii) at such address that a holder of a

Claim provides to the Plan Administrator after the Effective Date in writing and files at least fifteen (15) business days prior to a Distribution Date.    The Plan Administrator shall have no duty to ascertain the mailing address of any holder of a Claim other than as set forth herein. The date of payment or delivery shall be deemed to be the date of mailing.    Payments made in accordance with the provisions of this Section shall be deemed made to the holder regardless of whether such holder actually receives the payment.

### 9.8    Record Date for Distributions.

Except as otherwise provided in a Final Order of the Bankruptcy Court, transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 with appropriate filings ("Claim Transfer Document") made on or before the Effective Date (the "Record Date") shall be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer(s) may not have expired prior to the Record Date and except as specified in Section 9.7 of this Plan.    The Plan Administrator shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.    In making a Distribution with respect to any Claim, the Plan Administrator shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the proof of claim filed with respect to such Claim, on the Debtor's Schedules as the holder thereof, and upon such other evidence or record of transfer or assignment filed as of the Record Date.

### 9.9    Claims Administration Responsibility.

(a)    Unless a Claim is specifically Allowed prior to or after the Effective Date, the Trustee and the Plan Administrator prior to the Effective Date and the Plan Administrator and Plan Oversight Committee after the Effective Date reserve any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, or Priority Non-Tax Claims, liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.    The failure to object to any Claim prior to the Effective Date shall be without prejudice to the Plan Administrator's and Plan Oversight Committee's right to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of the Claim.

(b)    Objections to Claims.    Prior to the Effective Date, the Trustee and the Creditors' Committee shall be responsible for pursuing any objection to the allowance of any Claim.    From and after the Effective Date, the Plan Administrator and the Plan Oversight Committee may dispute, object to, compromise or otherwise resolve all Claims.    Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, all objections to Claims shall be filed and served no later than two hundred seventy (270) days after the Effective Date, provided that the Plan Administrator or the Plan Oversight Committee may request (and the Bankruptcy Court may grant) an extension of time by filing a motion with the Bankruptcy Court.

(c) <u>Filing Objections</u>. An objection to a Claim shall be deemed properly served on the claimant if the Trustee, Plan Administrator, the Committee or Plan Oversight Committee effect service of any such objection in accordance with Rule 3007 of the Bankruptcy Rules by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such claimant's proof of claim at least thirty (30) days prior to the hearing thereon. The Trustee, Plan Administrator, the Committee or Plan Oversight Committee may also effectuate service of an objection to a claim: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a Claimant is unknown, by first class mail, postage prepaid, to the signatory on the proof of claim or interest or other representative identified on the proof of claim or interest or any attachment thereto or; (iii) by first class mail, postage prepaid, on counsel that has appeared on the behalf of the Claimant in the Bankruptcy case.

(d) <u>Determination of Claims</u>. Except as otherwise agreed by the Trustee or Plan Administrator, any Claim as to which a proof of claim or motion or request for payment was timely filed in the Bankruptcy Case may be determined and liquidated after the Effective Date pursuant to (i) an order of the Bankruptcy Court (which order has not been stayed, reversed or amended and as to which determination or any revision, modification or amendment thereof, and the time to appeal or seek review or rehearing thereof, has expired, and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), or (ii) applicable non-bankruptcy law. Any Claim determined to be an Allowed Claim after the Effective Date pursuant to this section shall be treated as an Allowed Claim in accordance with the Plan.

**9.10  <u>Disputed Claims</u>**.

(a) Except to the extent the Court determines that a lesser amount is adequate, the Plan Administrator shall, on each Distribution Date, deposit in the Disputed Claims Reserve account(s) established by the Plan Administrator in consultation with the Plan Oversight Committee, Cash equal to the Distributions that would have been made to holders of Disputed Claims if such Claims were Allowed Claims in their full amounts or such lower amount as to which the holder of such Claim has agreed in writing or, in the case where any such Claim is unliquidated and/or contingent, the greater of (i) $1, and (ii) such other amount as is reserved by order of the Bankruptcy Court made upon motion of the holder of such Claim.

(b) For purposes of effectuating the provisions of this Section 9.10 and the Distributions to holders of Allowed Claims, the Court, on or prior to the Effective Date, or thereafter upon the request of any holder of a Claim or the Plan Administrator may liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be the aggregate amounts of the Disputed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of Distribution under this Plan and for purposes of the Disputed Claims Reserve.

(c) When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such holder would have been entitled if such holder's Claim were Allowed on the Effective Date, to the extent of available Cash to make such Distribution.

(d) In no event shall any holder of any Disputed Claim be entitled to receive (under this Plan or otherwise) any Cash payment which is greater than the amount reserved, if any, for such Disputed Claim pursuant to this Section 9.10. In no event shall the Plan Administrator have any responsibility or liability for any loss to or of any amount reserved under this Plan unless such loss is the result of that party's fraud, willful misconduct, breach of fiduciary duty or gross negligence. In no event may any Creditor whose Disputed Claim is subsequently allowed, pursue or recover or from any other Creditor in respect of any funds received as Distributions under the Plan.

(e) To the extent that a Disputed Claim ultimately becomes an Allowed Claim and is entitled to a Distribution in an amount less than the amount reserved for such Disputed Claim, then on the next succeeding Distribution Date, the Plan Administrator shall make, in accordance with the terms of this Plan, a Distribution of the excess amount reserved for such Disputed Claim.

(f) The Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

**9.11    Limitations on Funding of Disputed Claims Reserve**. Except as expressly set forth in the Plan, or otherwise agreed to in writing or ordered by the Court, the Plan Administrator shall not have any duty to fund the Disputed Claims Reserve.

**9.12    Tax Requirements for Income Generated by Disputed Claims Reserve**.

The Plan Administrator shall pay, or cause to be paid, out of the funds held in the Disputed Claims Reserve, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in the Disputed Claims Reserve. The Plan Administrator shall file, or cause to be filed, any tax or information return related to the Disputed Claims Reserve that is required by any federal, state, or local taxing authority.

**9.13    No Payments of Fractional Cents or Distributions of Less Than One Hundred Dollars**.

(a)     Any contrary provision hereof notwithstanding, for purposes of administrative convenience, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with halfpennies or less being rounded down and fractions in excess of half of a penny being rounded up.

(b)    Any contrary provision hereof notwithstanding, for purposes of administrative convenience, no Distribution of less than One Hundred Dollars ($100) shall be made pursuant to the Plan.    Whenever any Distribution of less than One-Hundred Dollars ($100) under the Plan would otherwise be required, such funds will be retained by the Plan Administrator for the account of the recipient until such time that successive Distributions aggregate to One Hundred ($100) Dollars, at which time such payment shall be made, and if successive Distributions do not ever reach One Hundred ($100) in the aggregate, then such Distributions shall be returned to the Unsecured Creditor Fund.

**9.14**    **Setoff and Recoupment**.    Except as otherwise provided in the Plan, the Plan Administrator may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Debtor may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Plan Administrator of any right of setoff or recoupment against the holder of any Claim.

**9.15**    **Payment of Taxes on Distributions Received Pursuant to the Plan**.

(a)    Any contrary provision hereof notwithstanding, as a precondition to payment of any Distribution to a Creditor under this Plan, unless included on the official proof of claim form filed by such Creditor in this Bankruptcy Case, each Creditor shall provide a valid tax identification or social security number (collectively the "Tax Information") for purposes of tax reporting by the Plan Administrator.    All Entities that receive Distributions under the Plan shall be responsible for reporting and paying, as applicable, any taxes on account of their Distributions.

(b)    At such time as the Plan Administrator believes that Distributions to a particular Class of Claims is likely, the Plan Administrator shall request Tax Information in writing from the Creditors (the "Tax Info Request").    Any Creditor who fails to respond to Tax Info Request within ninety (90) days from the date posted on the Tax Info Request, shall forfeit all Distributions such Creditor may otherwise be entitled to under this Plan and such forfeited funds will revert to the Estate to be disbursed in accordance with the terms and priorities established in this Plan.

**9.16**    **Compliance With Tax Withholding and Reporting Requirements**.

With respect to all Distributions made under the Plan, the Plan Administrator will comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority.

29

## ARTICLE 10 - PLAN INTERPRETATION, CONFIRMATION AND VOTING

### 10.1    Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired.

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

### 10.2    Withdrawal and Modification of Plan.

This Plan may be withdrawn or modified by the Trustee and the Creditors Committee at any time prior to the Confirmation Date.   The Trustee and the Creditors' Creditors' Committee, or the Plan Administrator, as the case may be, may modify the Plan in any manner consistent with section 1127 of the Bankruptcy Code prior to substantial consummation thereof.   Upon request by the Plan Administrator, with the advice and consent of the Plan Oversight Committee, the Plan may be modified after substantial consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

### 10.3    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the Plan, the laws of the State of New York applicable to contracts executed in such State by residents thereof and to be performed entirely within such State shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.

### 10.4    Voting of Claims.

Each holder of an Allowed Claim as of the Record Date in Class 4 shall be entitled to vote to accept or reject the Plan.  The Disclosure Statement Order shall govern the manner and procedures for casting of Ballots with the Voting Agent.

### 10.5    Acceptance by Impaired Class.

Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 10.6    Presumed Acceptances of Plan.

Classes 1, 2 and 3 are unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan.

### 10.7    Presumed Rejections of Plan.

Class 5 is conclusively presumed to have rejected the Plan.

30

### 10.8    Cram Down.

The Plan Proponents request that, in the event that any impaired Class entitled to vote on the Plan accepts the Plan, the Bankruptcy Court confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan over the presumed rejection of Class 5 and/or the possible rejection of the Plan by any impaired Class entitled to vote on the Plan.

### ARTICLE 11 - RETENTION OF JURISDICTION BY BANKRUPTCY COURT

**11.1**    From the Confirmation Date until entry of a final decree closing the Debtor's Bankruptcy Case (pursuant to 11 U.S.C. §350 and Bankruptcy Rule 3022), the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the Bankruptcy Case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim or Administrative Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtor or the Plan Administrator to any Creditors, holders of Claims, or other parties in interest;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals or the Trustee;

(c) to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d) to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court including, but not limited to, the Causes of Action and claims related to Unfinished Business and the Disputed Funds. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction to hear and determine compromises and settlements of any and all Causes of Action, including, but not limited to those Causes of Action set forth in the Exhibits to the Disclosure Statement, and to enter orders granting releases, injunctions, and exculpations similar in scope to the releases, injunctions, and exculpations granted by orders of the Bankruptcy Court in settlements approved prior to the Confirmation Date.

(e) to enforce and interpret the provisions of this Plan, the Confirmation Order and the Plan Administrator Agreement;

(f) to hear and determine any matters relating to the appointment and replacement of the Plan Administrator and the Plan Oversight Committee;

(g) to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

31

(h) to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(i) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, the Plan Administrator Agreement or in the Confirmation Order as may be necessary to carry out the purposes and the intent of this Plan;

(j) to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(k) to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated.

## ARTICLE 12 - MISCELLANEOUS PROVISIONS

### 12.1    Headings.

Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

### 12.2    No Attorneys' Fees.

No attorneys' fees with respect to any Claim or Interest shall be payable under the Plan, except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

### 12.3    Reservation of Rights.

If by March 31, 2014, or such later date as may be extended by the Committee in the exercise of its absolute discretion, the Confirmation Order is not entered, or if the Plan is confirmed but does not become effective, the Plan shall be deemed null and void and of no force or effect, and shall not be admissible in any proceeding, and the rights of all parties in interest in the Bankruptcy Case are and will be reserved in full.

### 12.4    Notices.

Except as otherwise specified in the Plan, all notices in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing. All communication shall be deemed sent if sent to the Trustee and the Creditors' Committee at the following addresses:

If to the Trustee:

DIAMOND McCARTHY LLP
620 Eighth Avenue, 39th Floor
New York, New York 10018
Tel:  (212) 430-5400
Fax: (212) 430-5499
Howard D.  Ressler, Esq.
Stephen T.  Loden, Esq.

If to the Creditors' Committee:

KLESTADT & WINTERS, LLP
570 Seventh Avenue, 17th Floor,
New York, New York 10018
Tel: (212) 972-3000
Fax: (212) 972-2245
Tracy L. Klestadt, Esq.
Sean C. Southard, Esq.
Joseph C. Corneau, Esq.

With copy to:
Steven J. Reisman
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

And a copy to:

Jerrold L. Bregman
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

### 12.5    **No Discharge**.

The Debtor will not receive a discharge under the Plan.

### 12.6    **Claims In Dollars**.

Any Claims asserted in foreign currencies shall be converted to United States Dollars in accordance with the prevailing exchange rates published by the Wall Street Journal on the Confirmation Date.

### 12.7    **Binding Effect**.

The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).   The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Debtor's Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

Dated: New York, New York
February 11, 2014

DIAMOND McCARTHY LLP


By:  _/s/ Howard D. Ressler____
       Howard D. Ressler
       Stephen T. Loden
620 Eighth Avenue, 39th Floor
New York, New York 10018
Tel:  (212) 430-5400
Fax: (212) 430-5499

*Attorneys for Sheila M. Gowan,
Chapter 11 Trustee for Dreier LLP*


KLESTADT & WINTERS, LLP


By:  _/s/ Tracy L. Klestadt___
       Tracy L. Klestadt
       Sean C. Southard
       Joseph C. Corneau
570 Seventh Avenue, 17th Floor,
New York, New York 10018,
Tel:  (212) 972-3000
Fax: (212) 972-2245

*Attorneys for Official Committee of
Unsecured Creditors*

34