UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                              :
                                                    :
DREIER LLP,                                         :         Chapter 11
                                                    :         Case No. 08-15051 (SMB)
                    Debtor.                         :
------------------------------------------------------X

# MEMORANDUM DECISION GRANTING PLAN ADMINISTRATOR'S OBJECTION AND RECLASSIFYING PROOFS OF CLAIM NOS. 171, 172, AND 173

**A P P E A R A N C E S:**

HOWARD M. FILE, ESQ., P.C.
*Counsel for Claimants*
260 Christopher Lane, Suite 102
Staten Island, New York 10314

    Howard M. File, Esq.
        Of Counsel

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS LLP
*Counsel to Sheila M. Gowan, as Plan
  Administrator for Dreier LLP*
570 Seventh Avenue, 17th Floor
New York, NY 10018

    Sean C. Southard, Esq.
    Brendan M. Scott, Esq.
    Lauren C. Kiss, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

       Sheila M. Gowan, the former chapter 11 trustee and current Plan Administrator for the estate of Dreier LLP has objected to the overlapping proofs of claim filed by Robin Bartosh, Toby Bartosh, and the Cosmetics Plus Group Ltd. ("Cosmetics Plus," and together with Robin Bartosh and Toby Bartosh, the "Claimants"). The Claimants assert that they have a security

interest in certain funds that Gowan holds, or alternatively, that Gowan holds those funds in trust for their benefit.[1]

The Court conducted a trial on July 22, 2015, a.0nd now concludes that the Claimants are, at most, unsecured creditors. Any superior claims to the funds acquired by the Claimants based on the transactions described below are subject to disallowance under 11 U.S.C. § 502(d), and the claims must be reclassified as general unsecured claims.

## BACKGROUND[2]

**A.    The Cosmetics Plus Bankruptcy**

On August 10, 2001, Cosmetics Plus and various affiliate companies filed for chapter 11 protection in the United States Bankruptcy Court for the Southern District of New York. Cosmetics Plus retained Traub, Bonacquist & Fox LLP (the "Traub Firm") as bankruptcy counsel. Cosmetics Plus subsequently employed the law firm Dreier LLP after Paul Traub and Steven Fox became partners at Dreier LLP. (*JPTO* ¶¶ 3-4.)

In 2003, Cosmetics Plus filed an adversary proceeding against its insurer, American International Group, Inc. ("AIG"), to recover under a business interruption policy for losses sustained as a result of the September 11, 2001 terrorist attacks. (DX B at ¶ 21.) By order dated February 26, 2008, (DX D at 1), Bankruptcy Judge Prudence Beatty, who was presiding over the Cosmetics Plus chapter 11 case, approved a settlement agreement between AIG and Cosmetics

---

[1]    The Claimants are represented by the same attorney and have not attempted to distinguish between the rights of the Bartoshes and Cosmetics Plus in the funds at issue in this case. This opinion will, therefore, refer to the Claimants collectively without determining their respective rights *inter se*.

[2]    In this opinion, "PX" refers to Gowan's trial exhibits, "DX" refers to the Claimants' trial exhibits, "Tr." refers to the trial transcript (ECF Doc. # 2180) and *JPTO* refers to section III of the *Joint Pretrial Order*, dated June 25, 2015 (ECF Doc. # 2154), which contained the parties' stipulation of facts.

Plus (the "Settlement Agreement") pursuant to which AIG agreed to pay $350,000 to Cosmetics Plus, "care of its general bankruptcy counsel, Dreier LLP." (DX C at 3-4.) AIG, through New Hampshire Insurance Company, issued a check for $350,000 to "Dreier LLP, as attorneys for Cosmetics Plus Group, Ltd. and Cosmetics Plus South, Ltd." on March 5, 2008. (DX H.) The funds were deposited into the Dreier LLP attorney trust account ending in the digits 5966 (the "5966 Account") and designated "Attorney Trust Account Client No. 600109.001 Cosmetics Plus" on March 14, 2008. (DX H; *JPTO* ¶ 6; PX 15.)

At the time of the deposit on March 14, 2008, the 5966 Account contained Dreier LLP client funds and Dreier LLP operating funds. It also contained the proceeds of Marc Dreier's note fraud scheme which has been described in previous decisions of this Court.[3] (*JPTO* ¶ 7.) The daily ending balance of the 5966 Account on March 14, 2008 was $3,090,191.44. (*JPTO* ¶ 8.) By mid-August 2008, however, the 5966 Account was completely exhausted and carried a negative balance for several days. (*JPTO* ¶¶ 10-15.)

Judge Beatty ordered the dismissal of Cosmetics Plus's chapter 11 cases by order dated October 30, 2008 (the "Dismissal Order"). (DX F.) The Dismissal Order directed the Cosmetics Plus estate to distribute its cash on hand to pay administrative expenses and United States Trustee fees, and then distribute "all remaining Cash . . . to the Secured Creditor [*i.e.*, the Bartoshes] in partial satisfaction of its Secured Claim." (DX F at ¶ 7.) As of that date, the 5966 Account had nearly $48 million on deposit.[4] (*See* PX 9 at 7.)

---

[3] *See, e.g.*, *In re Dreier LLP*, 429 B.R. 112 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 10 Civ. 4758, 2010 WL 3835179 (S.D.N.Y. Sept. 10, 2010).

[4] Although Traub and Fox had joined Dreier LLP, the Traub Firm still maintained an account at Citibank which included some Cosmetics Plus funds but not any of the Settlement Agreement proceeds. From those funds the Traub Firm paid $25,472.94 to Dreier LLP in satisfaction of its attorneys' fees as debtor's counsel in the

3

Despite the Dismissal Order, no funds were transferred by Dreier LLP to or for the benefit of the Claimants until early December 2008. The circumstances of that transfer are important to the resolution of this dispute. Marc Dreier was arrested in Canada on December 2, 2008. That same day, Fox sent an email to John Provenzano, Dreier LLP's comptroller, (Tr. 71:11-15), and Roseann Letizia[5] of Dreier LLP explaining that Dreier LLP was holding $350,000 in its client trust account on behalf of its client, Cosmetics Plus. He asked Provenzano and Letizia to draw a check payable to "Robin and Toby Bartosh" and forward it to Fox for delivery to Cosmetics Plus. (DX R.) His request did not meet with success, (Tr. 64:11-18), and the next day, Traub spoke with Provenzano to discuss the release of client trust funds by Dreier LLP. (Tr. 74:5-8, 75:6-9; *see also* Tr. 64:19-25.)

Following that conversation, Provenzano spoke with Dreier, the signatory on the 5966 Account, (Tr. 75:17-20), and received authorization to wire the funds requested by Traub. (Tr. 76:13-19.) On December 4, 2008, Dreier LLP initiated two wire transfers from the 5966 Account to the Traub Firm's account. (PX 11 at 1.) One of those transfers, in the amount of $441,145.58 (the "Traub Firm Transfer"), included the $350,000 owed to the Claimants under the Dismissal Order. It also included amounts corresponding to two other Traub Firm matters. (PX 11 at 1; DX U.)[6] The Traub Firm Transfer was made with an understanding that the funds

---

Cosmetics Plus case, $36,500.00 to Otterbourg, Steindler, Houston & Rosen, P.C., in satisfaction of its fees as counsel to the Cosmetics Plus official committee of unsecured creditors, (DX Y; Tr. 19:15-20:7), $3,475.00 on account of United States Trustee fees, and $11,518.97 to Robin and Toby Bartosh. (DX Y.)

[5]     Evidence and testimony at trial did not provide Letizia's job title or the precise scope of her duties. However, she had a role in administering one or more Dreier LLP escrow accounts. (*See* Tr. 61:17-25, 71:16-25, 80:24-81:18.) According to Provenzano, she provided information to him about the funds contained in the 5966 Account. (Tr. 80:24-81:18.)

[6]     Dreier LLP would commonly put more than one client's funds into a single account, and the firm would track the amount in the account based on the client's name or client matter number. (Tr. 78:6-15.) Provenzano prepared the schedule that reported the amounts of client funds purportedly held in trust in the 5966 Account, (Tr.

4

would be held by the Traub Firm for the benefit of particular Traub Firm clients, including Cosmetics Plus. (Tr. 64:19-65:11.) Once the transfer was received, the Traub Firm maintained the funds in an escrow account, (Tr. 44:5-7), until the funds were turned over to the Trustee in February 2009, (Tr. 45:22-46:4), pursuant to an agreement discussed below.

**B.    The Dreier LLP Bankruptcy**

On December 8, 2008, the Securities and Exchange Commission filed a complaint alleging that Dreier had violated the federal securities law through the sale of certain notes. *In re Dreier LLP*, 429 B.R. 112, 119 (Bankr. S.D.N.Y. 2010). On December 10, 2008, the United States District Judge Miriam G. Cedarbaum appointed a receiver, and the receiver filed a voluntary chapter 11 petition on behalf of Dreier LLP on December 16, 2008. *Id.* On January 9, 2009, Gowan was appointed chapter 11 trustee.

Gowan subsequently contacted Traub and requested the return of the Traub Firm Transfer which she would hold subject to further direction from the Court. (Tr. 44:7-45:1; DX X, at 1 of 3.) Accordingly, on February 27, 2009, the Traub Firm wired $441,145.58 to Gowan's account from the Traub Firm account. (Tr. 65:18-66:22; DX X, at 1 of 3.) Gowan holds the wired funds in a segregated escrow account subject to further order of the Court, (Tr. 66:12-22; DX X), and the Court assumes that whatever rights the Claimants had in the Traub Firm account continue in Gowan's account.

On March 18, 2009, Robin and Toby Bartosh and Cosmetics Plus filed proofs of claim in the Dreier LLP case. (*See Plan Administrator's Objection to Proof of Claim Nos. 171, 172 and*

---

80:16-81:1 (referring to DX U at 2)), based on information he had received from Letizia. (Tr. 81:4-6.)

5

*173*, filed Feb. 6, 2015 ("*Claim Objection*"), Exs. A, B & C (ECF Doc. # 2096).) Each proof of claim asserted a $350,000 secured claim against Dreier LLP based upon Dreier LLP's retention of the proceeds of the Settlement Agreement. (*Id.*) Gowan, now Plan Administrator, filed the *Claim Objection* on February 6, 2015. The *Claim Objection* argued that the proceeds of the Settlement Agreement had been "hopelessly commingled" with other funds in the 5966 Account, (*Claim Objection* ¶ 18), and the Claimants' secured claims should be reclassified as general unsecured claims. (*Id.* ¶¶ 27-28.)

In response, the Claimants argued that the Traub Firm had failed to comply with Judge Beatty's Dismissal Order in a timely manner, and that the Settlement Agreement proceeds had been segregated and held by the Traub Firm for the benefit of the Claimants from December 4, 2008 through February 27, 2009. (*Claimants' Response to Plan Administrator's Objections to Proof of Claim Nos. 171, 172, and 173*, filed Mar. 17, 2015, at 7 (ECF Doc. # 2110).) Additionally, the Claimants argued that equitable principles justified imposition of a constructive trust on the funds for their benefit and that equity supported relaxation of the requirement that they be required to trace their interest in the funds. (*Id.* at 10-12.)

Gowan replied, *inter alia*, that to the extent the Traub Firm Transfer provided the Claimants with rights superior to general unsecured creditors, such a transfer was a preference subject to avoidance pursuant to 11 U.S.C. § 547(b). (*Plan Administrator's Reply to Claimants' Response and in Further Support of Plan Administrator's Objection to Proof of Claim Nos. 171, 172, and 173*, filed Mar. 23, 2015, at 4-5 (ECF Doc. # 2113).)

6

## DISCUSSION

A properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). An objector may negate the prima facie validity of such a proof of claim and shift the burden of proof back to a claimant by producing "evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 CIV. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992)). Thereafter, a claimant must prove the validity of a claim by a preponderance of the evidence. *Id.*

### A.   The Secured Claim

The Claimants do not hold secured claims. The Code requires that the property which is the subject of a secured claim be property "in which the estate has an interest." 11 U.S.C. § 506(a)(1). The beneficial ownership of funds in an attorney escrow account does not create a secured claim against a debtor because escrowed funds are not property of an estate. *See Alarmex Holdings, LLC v. Gowan (In re Dreier LLP)*, 527 B.R. 126, 134 (S.D.N.Y. 2014). Accordingly, although the Claimants might have a right to get their money on some other theory, it would not be as secured creditors of the Dreier LLP estate. *Id.*

### B.   The Trust Claims

#### 1.   Constructive Trust

The Claimants contend that they are beneficiaries of a constructive trust, but they are not. A constructive trust may be imposed when "property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Sharp v. Kosmalski*, 351 N.E.2d 721, 723 (N.Y. 1976) (quoting *Beatty v. Guggenheim Exploration Co.*,

7

122 N.E. 378, 380 (N.Y. 1919)). The party seeking to impose a constructive trust under New York law must show "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *Superintendent of Ins. v. First Cent. Fin. Corp. (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 212 (2d Cir. 2004) (quoting *United States v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995)) (noting that unjust enrichment is the "most important" of the four elements). In addition, the person asserting a constructive trust must be able to identify the trust *res*, that is, "the claimant of funds held in trust or in escrow bears the burden of tracing those funds 'to the specific property at issue.'" *Alarmex*, 527 B.R. at 135 (quoting *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 344 (Bankr. S.D.N.Y. 1999)); *accord United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985) ("It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer."); *Schick*, 234 B.R. at 345 ("Proof of a trust or escrow . . . is not enough"; the beneficiary "must also trace the payments to the true or equitable owners.").

The Claimants cannot trace their interest in the funds held by Gowan. When a trust account is fully dissipated, a beneficiary of a trust is generally no longer able to trace the funds and thus, no longer has rights superior to those of other creditors.[7] *Majutama v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 142 B.R. 633, 638 (S.D.N.Y. 1992) ("When a fund has been exhausted, there can be nothing to identify in it."); 5

---

[7] An exception to this statement can occur when the trust property "can be identified 'in its original or substituted form.'" *Majutama v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 142 B.R. 633, 639 (S.D.N.Y. 1992) (quoting *First Fed. of Michigan v. Barrow*, 878 F.2d 912, 915 (6th Cir. 1989)). Thus, for example, if a trustee takes trust funds "and use[s] [them] to buy a cow, [the trust beneficiary] could trace the trust *res* to the cow . . . ." *Id.* Here, Claimants have not argued that the $350,000 held for their benefit by Dreier LLP was used to purchase specific, identifiable assets over which a trust should be imposed.

8

ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 541.28[4] (16th ed.) ("COLLIER") (noting that "where the trust property has been disposed of or dissipated in such manner as to leave nothing in its place" the "purported beneficiary becomes merely a general creditor of the estate"). The proceeds of the Settlement Agreement were placed in the commingled 5966 Account, and that account was fully dissipated by mid-August 2008. (*JPTO* ¶¶ 10-15.) Although funds were subsequently added to the 5966 Account at the time of the Traub Firm Transfer, the Claimants cannot trace the Settlement Agreement proceeds into the 5966 Account, or from there into the Traub Firm account or Gowan's account. The funds did not, in this regard, become traceable simply because the Traub Firm placed them in an attorney escrow account.

The Claimants argue that the tracing requirement should be relaxed, but their argument is unpersuasive for the same reason that the Claimants cannot show unjust enrichment. Judge Glenn's decision in *Entegra Power Grp. LLC v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP)*, 493 B.R. 421 (Bankr. S.D.N.Y. 2013) explains why. There, former clients of the debtor law firm sought to compel the return of an unearned prepetition retainer that the debtor had deposited in its general operating account. Discussing the elements of a constructive trust in connection with the parties' cross-motions for judgment on the pleadings, the Court questioned whether the plaintiff could demonstrate unjust enrichment. It observed that under the debtor's confirmed plan, all of the estate property was to be distributed to the creditors. Imposing a constructive trust would favor the plaintiffs but reduce the recoveries of the other creditors. In addition, the debtor would not retain the funds if the constructive trust failed, and would not, therefore, be unjustly enriched. *Id.* at 434.

The *Dewey* Court applied similar reasoning in refusing to relax the tracing requirement. Although some decisions, including those cited by the Claimants relaxed the tracing requirement where a fiduciary breached his fiduciary duty, *see Wilde v. Wilde*, 576 F. Supp. 2d 595, 605 (S.D.N.Y. 2008), or where the equities of the case so required, *Martha Graham Sch. and Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 224 F. Supp. 2d 567, 611 (2002), *aff'd in part & vacated in part,* 380 F.3d 624, 646 (2d Cir. 2004); *Rogers v. Rogers*, 473 N.E.2d 226, 227 (N.Y. 1984); *see Simonds v. Simonds*, 380 N.E.2d 189, 193 (N.Y. 1978) ("[I]nability to trace plaintiff's equitable rights precisely should not require that they not be recognized, much as in the instance of damages difficult to prove."), relaxation of the tracing requirement is inappropriate in a "zero sum" game where imposition of a constructive trust will reduce the recovery by the other unsecured creditors. *Dewey*, 493 B.R. at 436. Here, relaxing the tracing requirement – in truth, eliminating it –will elevate the Claimants' unsecured claim, worth pennies on the dollar, to a priority claim that will be paid in full at the expense of the other unsecured creditors. *Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 180-81 (2d Cir. 2007) (noting that a "constructive trust . . . places its beneficiary ahead of other creditors with respect to the trust *res*").

### 2. Express Trust

Although the Claimants have failed to satisfy the requirements for imposing a constructive trust, they have demonstrated that an express trust was created in their favor. An express trust "requires (1) a designated beneficiary, (2) a designated trustee, (3) a fund or other property sufficiently designated or identified to enable title of the property to pass to the trustee, and (4) actual delivery of the fund or property, with the intention of vesting legal title in the trustee." *Gowan v. Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 420 (Bankr. S.D.N.Y.

10

2011) (*quoting In re Doman*, 68 A.D.3d 862, 863 (2d Dep't 2009)). The intent to create a trust may be shown by explicit declaration or it may be based upon the circumstances showing "beyond reasonable doubt that a trust was intended to be created." *Id.* at 421-22. The "crucial factor" in determining whether a trust is formed is the presence of a duty to segregate assets. *In re Einhorn Vacation Planning Center*, 59 B.R. 179, 184 (Bankr. E.D.N.Y. 1986); *see Dreier*, 452 B.R. at 421-22.

The Traub Firm Transfer satisfies these elements. Fox's December 2, 2008 email to Provenzano and Letizia stated that the $350,000 in Settlement Agreement funds held by Dreier LLP were "on behalf of the referenced client" (Cosmetics Plus) and requested a check payable to "Robin and Toby Bartosh" in that amount be "forward[ed] to me for delivery to the client." (DX R.) Ultimately a check was not issued, but, instead, Dreier LLP wired the funds to the Traub Firm's account. The transfer vested legal title to the funds in the Traub Firm which deposited the funds into a segregated account for the benefit of Cosmetics Plus, but, ultimately, for the Bartoshes who were entitled to the distribution under the Dismissal Order. *See Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002) ("It is well-established that escrow monies are held in trust and that an escrow agent is a trustee . . . ."). Moreover, Gowan admits that "[t]he record . . . shows that, in requesting the Traub Firm Transfer, Traub intended to safe guard funds that he believed belonged to his clients pending further court order." (*Plan Administrator's Memorandum of Law in Response to Post-Hearing Memorandum of Claimants Robin Bartosh, Toby Bartosh and the Cosmetics Plus Group Ltd. and in Further Support of Plan*

*Administrator's Objection to Proof of Claim Nos. 171, 172, and 173*, filed Aug. 21, 2015, at 12 (ECF Doc. # 2173).)[8]

### C.    The Preference Claim

Although the Claimants have established that the Traub Firm, and hence Gowan, held the Claimants' share of the Traub Firm Transfer in an express trust for their benefit, this does not end the matter. The express trust was created only a few days before the commencement of the Dreier LLP chapter 11 case, and the Traub Firm Transfer would constitute a preference under 11 U.S.C. § 547(b).[9] *See Alithochrome Corp. v. E. Coast Finishing Sales Corp. (In re Alithochrome*

---

[8]   The Claimants argue as an alternative theory that the Dismissal Order gave them a superior claim to the funds in the 5966 Account. (*Post-Hearing Memorandum on Behalf of Claimants Robin Bartosh, Toby Bartosh and the Cosmetics Plus Group Ltd.*, filed Aug. 27, 2015, at 12-13 (ECF Doc. # 2176) ("Judge Beatty's October 30, 2008 Order created a legal obligation for both Dreier and/or [the Traub Firm] to turn over the settlement proceeds held in trust for [Cosmetics Plus]'s secured creditors . . . [and] had the effect of cutting off any claim Dreier LLP had to the funds held in escrow. . . .").) Although disobedience of the Dismissal Order might subject the disobedient person to contempt, the Claimants have not cited any authority to support their argument that the Dismissal Order gave the Claimants a specific property interest in the funds in the Dreier LLP 5966 Account that was superior to the rights of other Dreier LLP creditors. In fact, it would make them, at most, unsecured creditors of Dreier LLP once bankruptcy ensued. *Cf. Route 21 Assocs. of Belleville, Inc. v. MHC, Inc.*, 486 B.R. 75, 91 (S.D.N.Y. 2012) (holding creditor's right to specific performance of indemnification agreement entitled creditor to general unsecured claim because "[s]pecific performance of that obligation inherently occurs by means of a monetary payment"), *aff'd sub nom., Route 21 Assocs. of Belleville, LLC v. Millennium Custodial Trust (In re Lyondell Chem. Co.)*, 542 F. App'x 41 (2d Cir. 2013); *see also Air Line Pilots Ass'n v. Cont'l Airlines (In re Cont'l Airlines)*, 125 F.3d 120, 133 (3d Cir. 1997) (affirming bankruptcy court's treatment of claim for equitable remedy as a general unsecured claim).

[9]   Section 547(b) provides:

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made—
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if—
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had no—been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547

*Corp.)*, 53 B.R. 906, 911-12 (Bankr. S.D.N.Y. 1985) ("[I]f a trust were created during the preference period, by delivery of the proceeds into escrow, the creation of the trust itself would be a transfer probably avoidable by Alithochrome . . . ."); *see also Torres v. Eastlick (In re N. Am. Coin & Currency, Ltd.)*, 767 F.2d 1573, 1576 n.2 (9th Cir. 1985) ("[A] promise to create a trust for the benefit of certain creditors would probably be treated as a voidable preference under the Bankruptcy Code.") *amended*, 774 F.2d 1390 (9th Cir. 1985); *Morris Plan Indus. Bank of New York v. Schorn*, 135 F.2d 538, 539 (2d Cir. 1943) (noting that the prepetition payment on account of converted or embezzled trust funds constitutes a preference).

Prior to the Traub Firm Transfer, the funds in the 5966 Account were the property of Dreier LLP. *Gardi v. Gowan (In re Dreier LLP)*, Nos. 10 Civ. 4758 (DAB), 2010 WL 3835179, at *5 (S.D.N.Y. Sept. 10, 2010) (stating that funds stolen from a client and deposited into the 5966 Account were property of Dreier LLP). The Claimants had no greater right to those funds than other unsecured creditors at the time of the Traub Firm Transfer. That transfer, whether made to pay a debt owed to the Traub Firm, to create an express trust for the benefit of the Claimants, or to pay the Claimants outright, was a transfer of Dreier LLP's property within the broad definition of "transfer" under 11 U.S.C. § 101(54)(D) (the term "transfer" includes "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with . . . property; or . . . an interest in property."). In addition, the transfer satisfied an antecedent debt; Dreier LLP had converted the Settlement Agreement proceeds and was obligated to restore them. Furthermore, Dreier LLP was presumptively insolvent, 11 U.S.C. § 547(f)), and the Claimants did not controvert the presumption at trial. As a result, an express trust would allow the Claimants to recover more than they otherwise would in a hypothetical chapter 7 liquidation because the trust would satisfy their claim in full whereas they would

recover less than full payment from an insolvent Dreier LLP. *See Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 380 B.R. 324, 339-40 (Bankr. S.D.N.Y. 2008) (noting that Section 547(b)(5) was satisfied where estate lacked assets to make 100% distribution to general unsecured creditors). Accordingly, any trust claim or other enhanced claim arising within 90 days of the petition date would have to be disallowed[10] "unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable." 11 U.S.C. § 502(d).

The Claimants make three arguments in opposition to the disallowance of their enhanced claim. First, they maintain that the preference claim is untimely under Section 546(a).[11] (*Post-Hearing Reply Memorandum on Behalf of Claimants Robin Bartosh, Toby Bartosh, and the Cosmetics Plus Group Ltd.*, filed Aug. 27, 2015 ("*Reply Mem.*"), at 13 (ECF Doc. # 2176).) While § 546 places a time limit on when "[a]n *action or proceeding* under section . . . 547 . . . may . . . be *commenced*," 11 U.S.C. § 546(a) (emphasis added), Gowan is not seeking to commence an action or proceeding to avoid a transfer, but rather, is using § 502(d) defensively against Claimants' claims. The statute of limitations under § 546(a) does not apply when the

---

[10] As noted in footnote 8, the Claimants argue that the Dismissal Order gave them superior rights to the funds in the 5966 Account. Even if that were true, the transfer of those rights by judicial order would constitute a preference for the same reason as the creation of an express trust five weeks later.

[11] Section 546(a) provides that

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--
> (1) the later of--
> (A) 2 years after the entry of the order for relief; or
> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546.

avoidance claim is asserted defensively under § 502(d). *In re Asia Global Crossing, Ltd.*, 344 B.R. 247, 251 (Bankr. S.D.N.Y. 2006) (A "trustee can invoke § 502(d) even if the statute of limitations contained in 11 U.S.C. § 546(a)(1) has expired on the underlying avoidance claim."); *In re Metiom, Inc.*, 301 B.R. 634, 641 (Bankr. S.D.N.Y. 2003) ("The plain language of section 502(d) of the Bankruptcy Code, as well as its purpose and legislative history, clearly support declining to apply section[] 546(a) . . . to claim objections under section 502(d) . . . ."); *see United States Lines, Inc. v. United States (In re McLean Indus., Inc.)*, 196 B.R. 670, 676 (S.D.N.Y. 1996) (noting that Section 502(d) does not reference Section 546(a)(1)). Moreover, allowing the Claimants to enhance their recovery based on a preferential transfer at the expense of the unsecured creditors would undercut the purpose of the preference laws to promote the equitable distribution of the estate.

Second, the Claimants argue that a transfer pursuant to the Dismissal Order cannot be a voidable preference because such transfer "would have been pursuant to a Court Order." (*Reply Mem.* at 14.) For the reasons stated in footnote 8, the Claimants have not explained how the Dismissal Order gave them a superior property right in the funds in the 5966 Account, but even if it did, the Claimants do not cite authority that would remove the transfer of those rights from the reach of preference law. The fact that a transfer is made involuntarily pursuant to a court order does not preclude the applicability of Section 547(b). *See Prior v. Farm Bureau Oil Co. (In re Prior)*, 176 B.R. 485, 497 (Bankr. S.D. Ill. 1995) ("[T]he Court finds that transfer of the debtor's interest pursuant to the citation lien and the district court's order constituted an avoidable preference under § 547."); 5 COLLIER ¶ 547.03[1][a] (noting that "section 101(54) includes 'involuntary' transfers" and therefore encompasses judicial liens obtained by a creditor if the other Section 547(b) requirements are met).

15

Third, the Claimants argue that the funds were not property of the estate because they were held in trust by virtue of the Dismissal Order. This is a variation of the Claimants' argument that the Dismissal Order created a right in the funds in the 5966 Account. For the reasons stated, the Claimants have not supplied any supporting authority for their theory, and even if the Dismissal Order did create a superior interest, that transfer would be an avoidable preference.

*Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir. 1979), which the Claimants' cite, is distinguishable. In *Selby*, the debtor was a contractor that employed subcontractors to install certain equipment for Ford. Ford owed the debtor money, and the debtor owed the subcontractors money, so the debtor authorized Ford to issue checks directly to the subcontractors. Although those checks were issued within the preference period, the court held that those transfers were not preferences because the debtor never had a beneficial interest in the funds due to the operation of the Michigan Builders' Trust Fund Act, Mich. Comp. Laws § 570.151. That statute imposed a statutory trust on the funds and thus the court held that those funds had never been the debtor's property. *Selby*, 590 F.2d at 644. Here, in contrast, the funds sought by the Claimants were Dreier LLP property at the time of the Dismissal Order. Under the Claimants' theory, the Dismissal Order transferred Dreier LLP's interest in that portion of the 5966 Account to the Claimants.

In the end, and regardless of whether the Claimants are the beneficiaries of an express or constructive trust or acquired superior rights in the funds now held by Gowan under the Dismissal Order, their enhanced claims are subject to disallowance. The Claimants cannot return the transfer as required by § 502(d), and the practical effect of this decision is to leave them with unsecured claims, which is precisely what they had immediately prior to the Dismissal Order

and, for the reasons stated, the Traub Firm Transfer.  Accordingly, and subject to other possible objections that Gowan may have (the Court does not suggest there are any), the Claimants' claims should be reclassified as unsecured.  The parties have not discussed who as between the Bartoshes or Cosmetics Plus would hold that claim, and the Court does not decide that issue today.  It may not matter because in the end the Bartoshes are entitled under the Dismissal Order to any sums paid by Gowan to Cosmetics Plus.  The Court has considered the remaining arguments made by the Claimants and concludes that they lack merit.  Settle order on notice.

Dated: New York, New York
       January 4, 2016

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge