**KLESTADT WINTERS JURELLER**
 **SOUTHARD & STEVENS, LLP**
Sean C. Southard
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Attorneys for Sheila M. Gowan, in her capacity as*
*Plan Administrator for the Post-Confirmation*
*Chapter 11 Estate of Dreier LLP*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                                                   :
                                                                              :     Chapter 11
    DREIER LLP,                                   :
                                                                              :     Case No. 08-15051 (DSJ)
                        Debtor.           :
------------------------------------------------------------x

**PLAN ADMINISTRATOR'S MOTION SEEKING ENTRY OF AN ORDER**
**(I) DISCHARGING THE PLAN ADMINISTRATOR AND HER PROFESSIONALS**
**OF ANY FURTHER DUTIES IN THE CHAPTER 11 CASE AND (II) CLOSING**
**THE CHAPTER 11 CASE AND ENTERING A FINAL DECREE**

TO    THE HONORABLE DAVID S. JONES,
        UNITED STATES BANKRUPTCY JUDGE:

Sheila M. Gowan (the "Plan Administrator"), in her capacity as Plan Administrator for the post-confirmation estate (the "Estate") of Dreier LLP ("DLLP"), by her attorneys, Klestadt Winters Jureller Southard & Stevens, LLP, as and for her motion (the "Motion") pursuant to section 350 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an order (i) discharging the Plan Administrator and her professionals from further duties in the above-captioned chapter 11 case (the "Chapter 11 Case"), and (ii) closing the Chapter 11 Case and entering a final decree, respectfully represents as follows:

# PRELIMINARY STATEMENT

The Plan Administrator is responsible for implementing the applicable provisions of the *Second Amended Plan of Liquidation of Dreier LLP Jointly Proposed By the Chapter 11 Trustee and the Official Committee of Unsecured Creditors Pursuant to Chapter 11 of the United States Bankruptcy Code* [DE 1848] (the "Plan")[1] and administering the Debtor's estate in accordance with the terms of the Plan and the Plan Administrator Agreement. In particular, the Plan Administrator was tasked with the management and liquidation of the Debtor's Estate and the making of distributions to holders of allowed claims pursuant to the Plan. All Disputed Claims have been resolved, all of the Assets have been liquidated or abandoned with the exception of the Westford Judgments, all duties and obligations of the Plan Administrator have been fulfilled, and all Distributions required to be made by the Plan Administrator under the Plan and Plan Administrator Agreement have been made. Given the foregoing, the Plan Administrator respectfully requests the entry of an order, in substantially the same form as that annexed hereto as **Exhibit A**, (i) discharging the Plan Administrator and her professionals from further duties in the Chapter 11 Case and (ii) closing the Chapter 11 Case.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested herein is section 350(a) of the Bankruptcy Code, Bankruptcy Rule 3022, and Rule 3022-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## BACKGROUND

A.   **Chapter 11 Case**

4.   On December 8, 2008 in SEC v. Dreier, Case No. 08-civ-10617 (MGC), Mark F. Pomerantz (the "Receiver") was appointed as receiver of Marc Dreier's assets, including Marc Dreier's interests in the Debtor and certain of the Debtors' affiliated entities.

5.   On December 16, 2008, (the "Petition Date") the Receiver, on behalf of Dreier LLP, commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). Upon the application of the Receiver, on December 19, 2008, the Court entered an order directing the appointment of a Chapter 11 Trustee pursuant to section 1104 of the Bankruptcy Code.

6.   On or about December 30, 2008, the Office of the United States Trustee (the "U.S. Trustee") appointed Sheila M. Gowan as Chapter 11 Trustee, which appointment was approved by this Court on January 9, 2009.

7.   On April 29, 2014, the Bankruptcy Court entered an order [Docket No. 1921] (the "Confirmation Order"), among other things, confirming the Plan.

8.   The Effective Date of the Plan occurred on May 13, 2014. *See* Docket No. 1929.

9.   Pursuant to the Plan and Confirmation Order, Sheila Gowan was appointed the Plan Administrator to implement the Plan in a manner consistent with the terms and conditions set forth therein.

B. **Plan Administrator's Satisfaction of Plan Obligations**

i. **Assets Excluding Westford Judgments**

10. Pursuant to the Plan, the Plan Administrator is responsible for liquidating the Debtor's Assets.

11. The Plan provided for the retention of claims and causes of action of DLLP, which claims and causes of action retained by the estate were specified in Exhibits B, C, D and E of the *Second Amended Disclosure Statement For Plan Of Liquidation Of Dreier LLP Jointly Proposed By The Chapter 11 Trustee And The Official Committee Of Unsecured Creditors Pursuant To Chapter 11 Of The United States Bankruptcy Code* (the "Disclosure Statement") [Docket No. 1850]. The Plan Administrator has carried out her responsibilities under the Plan by investigating, prosecuting, and settling all Claims and Causes of Action.

12. In addition, the Plan Administrator was authorized to enter into settlements on all matters affecting the Estate, including certain Receivables, pursuant to which the Estate had an interest in any fee awarded due to the pre-petition work performed by DLLP on the case. The Plan Administrator and her counsel negotiated numerous settlements concerning an award of DLLP's attorneys' fees and expenses.

13. Once all Assets (other than the Westford Judgments) had either been (i) liquidated to the best of the Plan Administrator's ability or (ii) abandoned, the Plan Administrator entered into negotiations with Oak Point Partners, LLC ("Oak Point") in connection with a sale of the remaining assets. Pursuant to an Asset Purchase Agreement between the Plan Administrator and Oak Point, dated June 8, 2023, the Plan Administrator sold and assigned to Oak Point all of the Estate's right, title and interest in and to certain remnant assets in exchange for $25,000.[2]

---

2 The Westford Judgments were excluded from the sale to Oak Point.

ii. **Westford Judgments**

14. On November 24, 2014, the Court entered an order pursuant to section 105(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 authorizing and approving the settlement of adversary proceeding no. 10-05447, captioned *Sheila M. Gowan, as Plan Administrator, v. Westford Asset Management LLC, et al.* Pursuant to the terms of the settlement agreement (the "Settlement Agreement"), which was approved by the Court, the Plan Administrator and certain of the defendants filed with the Court the following stipulations calling for the entry of judgment against those defendants (the "Settling Defendants"):

a. Stipulation for Entry of Judgment Against Defendant Westford Special Situations Master Fund, LP;

b. Stipulation for Entry of Judgment Against Defendant Epsilon Global Master Fund, L.P.; and

c. Stipulation for Entry of Judgment Against Defendant Epsilon Global Master Fund II, L.P.

15. On December 31, 2014, the Court entered final judgments (bearing interest at the rate of 4% per annum) in favor of the Plan Administrator and against the Settling Defendants in the following amounts:

a. Westford Special Situations Master Fund, LP, in the amount of $14,071,400.00;

b. Epsilon Global Master Fund, L.P., in the amount of $8,597,400.00; and

c. Epsilon Global Master Fund II, L.P., in the amount of $9,531,200.00 (collectively, the "Westford Judgments").

16. Under the stipulations and the terms of the Settlement Agreement, the Plan Administrator agreed to forbear execution of the Westford Judgments until the earlier to occur of (i) December 31, 2020 or (ii) the date that an Event of Default (as defined in the Settlement

Agreement) occurs (the "Forbearance Period"). All claims against all remaining defendants were dismissed with prejudice.

17. Pursuant to the Settlement Agreement, interest accrued on the Westford Judgments at the rate of 4% per annum during the Forbearance Period. The first interest payment, in the approximate amount of $6,000,000.00 was due on December 31, 2019. The Settling Defendants defaulted on the first interest payment as well as on the Westford Judgments, together with the additional/accrued interest.

18. On or about February 6, 2020, the Plan Administrator moved this Court by Order to Show Cause for the appointment of a receiver for the Settling Defendants as permitted by the Security Agreements entered into by the parties.

19. On February 18, 2020, this Court entered an order appointing Eric B. Fisher as the receiver (the "Receiver") for the Settling Defendants.

20. Mr. Fisher filed the Receiver's first status report on March 19, 2020, the second status report on January 12, 2021, the third status report on April 6, 2021, the fourth status report on July 26, 2021, the fifth status report on October 5, 2021, and the sixth status report on January 7, 2022.[3]

---

[3] As set forth in greater detail in the Receiver's status reports, the Receiver focused his efforts on determining what, if any, assets existed to satisfy the Westford Judgments. Despite the Receiver's best efforts investigating potential assets, only $425,000 was collected through a settlement in an unrelated litigation involving some of the Settling Defendants. Aside from this litigation, the Receiver's investigation revealed that the assets of the Settling Defendants primarily consisted of minority stock interests in two non-public corporations that own patents. After months of investigation and effort, including consulting with experts familiar with the businesses of the two corporations, the Receiver was unable to monetize these assets.

21. After significant effort by both the Plan Administrator and the Receiver, the Plan Administrator determined that any prospects for collection of the Westford Judgments was highly unlikely, and that there were no new avenues to explore.  Accordingly, on October 27, 2022, the Plan Administrator filed a motion seeking the entry of an order (i) terminating the Receiver's appointment and discharging the Receiver and his professionals of any further duties, and (ii) approving the fees and expenses of the Receiver's professionals (collectively, the "Receivership Motion").

22. On October 18, 2022, the Bankruptcy Court entered an order granting the Receivership Motion which, among other things, approved the payment of fees to the Receiver's professionals totaling $242,433.26, in the aggregate, and directed the remaining funds in the Receiver's possession, totaling $182,566.74 (the "Receivership Funds"), obtained by monetizing one small asset, to be turned over to the Plan Administrator.  The Plan Administrator is in receipt of the Receivership Funds.

23. The Plan Administrator has made efforts to sell the Westford Judgments but has been unable to reach any agreement on terms that would be acceptable, and as a result, the Plan Administrator has not sold the Westford Judgments.  In the future, if any assets become available that might satisfy the Westford Judgments and that would generate a distribution to general unsecured creditors, the Plan Administrator will make an application to the Bankruptcy Court seeking entry of an order reopening the case.

    iii.    **Distributions**

24. Pursuant to section 5.16 of the Plan, the Plan Administrator was given the right to prosecute and resolve objections to Claims.  As of the Effective Date, the aggregate amount of Disputed Claims was approximately $134 million.

25. Subsequent to the Effective Date, the Plan Administrator and her counsel started the process of analyzing filed and scheduled Claims and objected to and resolved all Disputed Claims.

26. The Plan provided for five (5) classes of claims and interests: Class 1 (Wells Fargo Superpriority Claim), Class 2 (Secured Claims), Class 3 (Priority Non-Tax Claims), Class 4 (General Unsecured Claims), and Class 5 (Interests). *See* Plan, Article III.

27. Class 1 consisted of the Wells Fargo Superpriority Claim, which, as of October 9, 2012 was fixed at $940,527.33 pursuant to the terms of a certain stipulation and order [Docket No. 1461]. After the Effective Date, as assets of the Estate were liquidated, the Plan Administrator routinely made payments to Wells Fargo on account of the Wells Fargo Superpriority Claim.

28. Class 2 consisted of Secured Claims. Pursuant to the Debtor's books and records, except for Wells Fargo there were no Class 2 Claims. To the extent claims were filed against the Debtor asserting secured status, such claims were objected to by the Plan Administrator and reclassified as General Unsecured Claims. Accordingly, the Plan Administrator only made payment to Wells Fargo on account of its Class 2 Claim. The Secured Claim of Wells Fargo was fixed and allowed by stipulation, as of March 14, 2012, in the amount of $7,173,155.92 [Docket No. 1310]. The Plan provided for any deficiency claim of Wells Fargo to be treated as a Class 4 General Unsecured Claim.

29. Class 3 consisted of Priority Non-Tax Claims. Beginning on August 29, 2014 and in fulfillment of the expectations set forth in the Timetable Order, the Plan Administrator made distributions of approximately $1.9 Million to the Holders of Class 3 Claims.

30. Class 4 consisted of General Unsecured Claims. Holders of Class 4 Claims were entitled to receive, on a *pro rata* basis, up to one hundred percent (100%) of such Allowed General Unsecured Claim, in full and final satisfaction of such Allowed General Unsecured Claim from the Unsecured Creditor Fund. As a result of the Plan Administrator's efforts, Holders of Class 4 Claims entitled to receive a distribution under the Plan received an aggregate amount of approximately 10.22% of the Allowed amount of their claims over the course of four (4) interim distributions. In the aggregate, the Plan Administrator distributed approximately $29 million to the holders of Class 4 Claims.

31. Class 5 consisted of Interests. Holders of Class 5 Interests were not entitled to receive a Distribution under the Plan.

**RELIEF REQUESTED**

32. By this Motion, the Plan Administrator seeks entry of an order (i) discharging the Plan Administrator and her professionals from further duties in the Chapter 11 Case and (ii) closing the Chapter 11 Case and entering a final decree and order pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

**BASIS FOR REQUESTED RELIEF**

33. The Chapter 11 Case has been fully administered within the meaning of section 350 of the Bankruptcy Code, making it appropriate for the Court to (i) discharge the Plan Administrator and her professionals from further duties in the Chapter 11 Case and (ii) enter a final decree closing the Chapter 11 Case. "After an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a); *see also* Bankruptcy Rule 3022 ("After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party interest, shall enter a final decree closing the case.").

34. The term "fully administered" is not defined in the Bankruptcy Code or Bankruptcy Rules. However, in determining whether an estate has been fully administered for final decree purposes, courts frequently have considered the following non-exhaustive factors set forth in the advisory committee's note to the 1991 amendment to Bankruptcy Rule 3022:

    i.    whether the order confirming the plan has become final;

    ii.    whether deposits required by the plan have been distributed;

    iii.    whether the property proposed by the plan to be transferred has been transferred;

    iv.    whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

    v.    whether payments under the plan have commenced; and

    vi.    whether all motions, contested matters, and adversary proceedings have been finally resolved.

Bankruptcy Rule 3022, advisory committee's note to 1991 amendment; *see, e.g., In re Aquatic Dev. Grp. Inc.*, 352 F.3d 671, 676 (2d Cir. 2003); *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 541-545 (Bankr. E.D.N.Y. 1999).

35. The Chapter 11 Case has been "fully administered" within the meaning of section 350 of the Bankruptcy Code. In particular:

    i.    The Confirmation Order has become final;

    ii.    The Plan does not require any deposits;

    iii.    The property required to be transferred under the Plan has been transferred;

    iv.    The business and management of the property has been dealt with by the Plan;

    v.    The Plan Administrator has finished making payments under the Plan; and

      vi.    There are no outstanding contested matters or adversary proceedings.

36. In accordance with the requirements of Local Rule 3022-1, attached hereto as **Exhibit B** is a copy of the closing report (the "Closing Report"), which includes a summary of the fees and expenses awarded to the professionals since the inception of the Chapter 11 Case, as well as information regarding distributions made pursuant to the Plan.

37. The Plan Administrator has filed all post-confirmation reports with the UST through December 31, 2022 and paid all outstanding fees of the UST for this Chapter 11 Case pursuant to 28 U.S.C. § 1930(a)(6) through the first quarter of 2023. The Plan Administrator will file any remaining post-confirmation quarterly reports and pay any remaining quarterly fees owed to the UST after the amounts are finalized with the UST.

38. Based on the foregoing, ample justification exists for entry of a final decree closing this Chapter 11 Case.

## NOTICE

39. Notice of this Motion will be provided to (i) the UST, and (ii) all parties filing a notice of appearance in the Chapter 11 Case. The Plan Administrator submits that no other notice need be given.

*[Continued on Next Page]*

**WHEREFORE**, the Plan Administrator respectfully requests the entry of an order substantially in the form of **Exhibit A** attached hereto, (i) discharging the Plan Administrator and her professionals from further duties in the Chapter 11 Case, (ii) closing the Chapter 11 Case and entering a final decree, and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 30, 2023

          **KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

      By: */s/ Sean C. Southard*
        Sean C. Southard
        Lauren C. Kiss
        200 West 41st Street, 17th Floor
        New York, New York 10036-7203
        Tel: (212) 972-3000
        Fax: (212) 972-2245
        Email: ssouthard@klestadt.com
           lkiss@klestadt.com

        *Attorneys for Sheila M. Gowan, in her capacity as Plan Administrator for the Post-Confirmation Chapter 11 Estate of Dreier LLP*